**George THOMAS, Appellant,**

v.

**BEN TAUB GENERAL HOSPITAL and Baylor College of Medicine, Appellees.**

No. 14–00–00571–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 10, 2002.

A. Scott Alford, Houston, for appellant.

Glen Van Slyke, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

## OPINION ON MOTION
## FOR REHEARING

FOWLER, Justice.

On this day, the Court considered appellee's motion for rehearing. The motion is GRANTED. We withdraw our opinion of November 1, 2001 and issue this opinion in its stead.

Appellant, George Thomas, filed a medical malpractice suit pro se against appellees Ben Taub General Hospital and Baylor College of Medicine, complaining that appellees were negligent in treating Thomas' injuries and that appellees failed to obtain Thomas' informed consent to the surgical amputation of his toes. A liberal reading of Thomas' brief suggests that he raises two appealable complaints: (1) the trial court erred in dismissing his suit for want of prosecution, and (2) the trial court erred in failing to reinstate his claims. Because Thomas did not follow the statutory procedural requisites for filing a medical malpractice suit, we affirm the judgment of the trial court.

### FACTUAL BACKGROUND

Thomas suffered injuries to his right foot while mowing his grass with a power lawnmower. It is unclear from the record the exact nature of Thomas' injuries as a result of the accident, but Thomas' great toe, second toe, and possibly his third toe, were cut by the mower's blade. Thomas was taken by ambulance to the emergency room at Ben Taub Hospital where he received treatment for his injuries. After some apparent disagreement as to the proper method of treatment, the decision was made to amputate Thomas' right great toe and part of his right second toe. Whether appellees were negligent or failed to receive Thomas' informed consent are issues before this Court only to the extent that they trigger the procedural requirements of the Medical Liability and Insur-

ance Improvement Act of Texas ("the Act"). Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01 (Vernon Supp.2001).

### THE MEDICAL LIABILITY AND INSURANCE IMPROVEMENT ACT

In response to a dramatic increase in health care liability claims in the 1970's, the Texas Legislature passed the Act to curtail a "medical malpractice insurance crisis in the State of Texas." Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.02 (Vernon Supp. 2001). Because of the inordinate increase in medical malpractice suits filed during that time, medical professional liability rates and the amounts being paid out by insurers increased prohibitively. Id. To thwart an adverse impact on the availability of medical care and prevent the rising costs of medical care created by the lawsuit crisis, the Act requires compliance with several procedural requirements. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01.

### The Procedural Requisites

For each physician or health care provider named in a medical malpractice suit, a claimant must, within 90 days of the filing of suit, do one of two things: file an expert report, and either file a $5,000 cost bond, or place $5,000 in escrow. Id. § 13.01(a)(1)–(3). In the case of a pro se litigant who is unable to pay the cost bond or cash deposit, subsection (o) of § 13.01 provides an alternative: the claimant may file an affidavit of inability to pay costs, using the same form as required by Texas Rule of Civil Procedure 145(2). Id. § 13.01(o).

If the claimant does not satisfy any of the above alternatives, the trial court must enter an order requiring the claimant to file, within 21 days of the court's order, a $7,500 cost bond for each defendant. Id. § 13.01(b). If the claimant fails to comply

with the court's order, the court must dismiss the action for want of prosecution. This dismissal is subject to reinstatement if the claimant files a $7,500 cost bond and pays the defendant's costs of court. *Id.* § 13.01(c).

### Thomas failed to follow procedural requisites

Thomas did not file an expert report within 90 days of filing suit. Nor did Thomas file a $5,000 cost bond or place $5,000 in escrow for each appellee. Thomas also failed to take advantage of the provision allowing a pro se litigant to circumvent these requirements by filing an affidavit stating his inability to pay costs.

Consequently, the trial court entered an order compelling Thomas to file a $7,500 cost bond within 21 days of the order. *Id.* § 13.01(b)(1). Thomas did not comply with the trial court's order, and the trial court dismissed Thomas' suit for want of prosecution. *Id.* § 13.01(b)(2). One month later, Thomas filed a motion for a new trial [1] accompanied by two documents: a statement of inability to pay costs and an expert report. The trial court found both documents to be insufficient and denied Thomas' motion for a new trial.

### *DISCUSSION*

### The Dismissal

▮ We review a trial court's dismissal under section 13.01 for an abuse of discretion. *American Transitional Care Centers of Texas, Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). We hold that the trial court did not abuse its discretion in dismissing Thomas' suit. The language of the statute is clear. If, after suit, a claimant does not file an expert report, file a cost bond, or a cash deposit, or file an affidavit of a pro se litigant's inability to pay costs, the court "shall enter an order" requiring the claimant to file a $7,500 cost bond within 21 days. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(b)(1). If the claimant then fails to comply with the court's order, as Thomas did here, "the action shall be dismissed for want of prosecution...." *Id.* § 13.01(b)(2). The statutory language is mandatory, and where a plaintiff fails to satisfy one of the procedural options available, a trial court has no discretion to hear a plaintiff's medical malpractice suit. We overrule Thomas' first point of error.

### The Motion for New Trial/Failure to Reinstate

▮ In an attempt to entertain all of Thomas' appealable issues, we believe that Thomas complains in a second point of error that the trial court failed to reinstate his cause under section 13.01(c). In an attempt to comply with the Act, in his motion for new trial, Thomas filed a statement of his inability to pay costs along with a letter from Dr. Edward Jacquet. We review the adequacy of these documents to determine whether the trial court erred in failing to reinstate Thomas' suit.

---

1. In a seven-and-a-half page section of Thomas' brief, entitled "Issues Generally," which for the most part, rehashes his experiences at Ben Taub Hospital, Thomas refers only tangentially to the trial court's failure to grant a new trial. Near the end of the section, Thomas writes, "[I] was permitted to file for an order of a motion for a new trial. Nonetheless, the trial court later denied the Motion for New Trial and dismissed the case on the basis that the letter of expert report from Dr. Edward Jacquet was scrimpy." This statement is the only reference in Thomas' brief that even remotely complains of the trial court's failure to grant a new trial, although Thomas' reply brief demands a new trial. Additionally, the reporter's record on the purported motion for a new trial is entitled "Motion to Reinstate." Thus, we will consider Thomas' complaint as a failure to reinstate his cause under § 13.01(c) rather than a failure to grant a new trial.

As noted above, a pro se litigant who is unable to pay the cost bond or cash deposit may file an affidavit for security costs as long as the affidavit complies with Texas Rule of Civil Procedure 145(2). This rule provides the following:

> The affidavit shall contain complete information as to the party's identity, nature and amount of governmental entitlement income, nature and amount of employment income, other income, (interest, dividends, etc.), spouse's income if available to the party, property owned (other than homestead), cash or checking account, dependents, debts, and monthly expenses. The affidavit shall contain the following statements: 'I am unable to pay the court costs. I verify that the statements made in this affidavit are true and correct.' The affidavit shall be sworn before a Notary Public.

TEX.R. CIV. P. 145(2).

Set forth below is the note attached to Thomas' motion for new trial:

> Dear Sir,
>
> Included is the letter from Dr. Jacquet. I do not have any money [to] pay for anymore fees. I am disabled. I did talk to an attorney, and he may accept this case. I think it is very unfair to dismiss this case when I am the victim.
>
> Yours Sincerely,
>
> George Thomas

Thomas' statement of inability to pay costs is inadequate. It is not sworn or notarized, and it does not contain the information required under the rule, i.e., the nature and amount of employment income and government entitlements, non-homestead property owned, cash or checking accounts, debts, dependents and monthly expenses. Furthermore, it does not recite the language required by the statute: "I am unable to pay the court costs" [and] "I

verify that the statements made in this affidavit are true and correct." TEX.R. CIV. P. 145(2). We therefore find the affidavit inadequate to reinstate Thomas' claim, and hold that the trial court did not err when it failed to reinstate Thomas' claim based on the affidavit.

Because the affidavit was insufficient, Thomas was required to file a $7,500 cost bond for each appellee before his claim could be reinstated. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(c). He did not do this. Therefore, the adequacy of the expert's report is moot. We overrule Thomas' second issue on appeal and affirm the trial court's judgment in all respects.