Stephanie Wortham SMALLING, Individually and As Representative of the Estate of Skyler Kennedy Wortham–Krause, Deceased, Appellant,

v.

Michael O. GARDNER, M.D., Nicholas Zacharias, M.D., Baylor College of Medicine and its Divisions Baylor Perinatal Associates and Baylor Neonatology Associates, and St. Luke's Episcopal Hospital, Appellees.

No. 14–03–01079–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 10, 2005.

Rehearing Overruled April 21, 2005.

Rehearing En Banc Overruled July 14, 2005.

Katherine S. Youngblood, Houston, for Appellant.

Marion Woodrow Kruse, Jr., Suzan Cardwell, Jeffrey B. McClure, Cameron Pope, Alicia Thais Tabor, Houston, for Appellees.

Panel consists of Justices ANDERSON, FOWLER, and FROST.

## OPINION

WANDA McKEE FOWLER, Justice.

Stephanie Wortham Smalling, acting individually and on behalf of the estate of Skyler Kennedy Wortham–Krause, deceased, appeals the trial court's dismissal of her lawsuit against appellees because she failed to file an expert report as required for health care liability claims under the Medical Liability and Insurance Improvement Act. Smalling contends that the trial court erred because her claims are not health care liability claims and therefore no expert report was required. For the reasons discussed below, we affirm.

## I. Factual and Procedural Background

In March of 2000, Smalling[1] was approximately 23 weeks pregnant with her first child when she unexpectedly went into premature labor. She first went to the emergency room at Memorial Hermann Hospital–The Woodlands, but later transferred to appellee St. Luke's Episcopal Hospital ("St. Luke's"). Smalling transferred to St. Luke's so that, if efforts to stop the labor failed and the baby was born prematurely, the baby could be transferred to the superior Level III nursery facilities at Texas Children's Hospital ("TCH").

The baby girl, named Skyler Kennedy Wortham–Krause, was born at 8:23 p.m. on March 4, 2000. Present for the birth were family members, including Erich Krause, Smalling's husband and Skyler's father. Appellees Michael O. Gardner, M.D., and Nicholas Zacharias, M.D., the

---

1. At the time, Smalling's last name was Wortham. She later remarried and her name was changed to Smalling.

on-call obstetricians, participated in Skyler's delivery. According to Smalling, she and her family were told that Skyler died within minutes of her birth.

Smalling alleges that it was only after reviewing the medical records some time later that she learned that Skyler did not die moments after her birth, but instead lived for almost two hours. In addition, at some point, Smalling obtained at least one photograph of Skyler on a table, uncovered and surrounded by what appear to be soiled linens. Distressed by the revelation that her daughter may have lived without any comfort from family or without proper care, Smalling filed a petition to investigate a potential claim and took Dr. Gardner's deposition. In February of 2002, Smalling filed suit against Dr. Gardner, Dr. Zacharias, Baylor Perinatal Associates and Baylor Neonatology Associates (collectively, the "Baylor appellees") and St Luke's. She also sued other health care providers for medical negligence relating to her prenatal care. Those claims were eventually severed and are not part of this appeal.

In her original petition, Smalling complained that St. Luke's and the Baylor appellees engaged in a concerted effort to deny appropriate custodial or palliative care to Skyler and to prevent Smalling from knowing the status, location, and condition of her daughter. These actions, Smalling alleged, deprived her and her family of the right to nurture Skyler and to make informed decisions about the type of care Skyler might require and should receive. Among other things, she alleged that Skyler was not taken to any nursery, but was instead kept in a "secret location" and was denied proper attention, comfort, or custodial or palliative care. Her claims included breach of contract, common law negligence and negligent misrepresentation, fraud, misrepresentation, and fraud in

the inducement, deceptive trade acts and practices, intentional infliction of emotional distress, and false imprisonment. Smalling expressly alleged that her claims were not health care liability claims and so allegedly were not governed by article 4590i of the Texas Revised Civil Statutes, also known as the Medical Liability Insurance and Improvement Act ("MLIIA"). She also denied that a physician-patient relationship existed between Skyler and appellees.

In January of 2003, appellees filed motions to dismiss Smalling's claims against them, alleging that she must file an expert report as required for health care liability claims under the MLIIA. The next month, Smalling amended her petition to allege that appellees did not send Skyler to TCH as had been arranged and added claims for kidnaping, child abduction, and conspiracy. On March 12, 2003, the trial court granted appellees' motions and dismissed Smalling's claims against them. Smalling requested findings of fact and conclusions of law, and later filed a notice of past due findings, but the trial court declined to file them.

Smalling then moved to reconsider the dismissal and filed, at the same time, a second amended petition. In June of 2003, the trial court denied the motion to reconsider, ordered severance and entry of final judgment dismissing with prejudice all of Smalling's claims against appellees. This appeal followed.

## II. Analysis

On appeal, Smalling contends the trial court erred by (1) dismissing her claims for failing to file an expert report as required under the MLIIA; (2) deciding if a statute applies by granting a motion to dismiss instead of by summary judgment motion; (3) failing to find appellees are estopped from asserting the requirement

of, and have waived the right to insist on, an expert report; (4) denying Smalling's motion for continuance and the right to conduct discovery; (5) dismissing Smalling's claims in violation of the open courts and special laws provisions of the Texas Constitution; (6) refusing to make findings of fact and conclusions of law; (7) abusing its discretion in any fact findings inherent in the dismissal; and (8) entering a take-nothing judgment in response to a motion to dismiss. Smalling also moved to strike portions of St. Luke's and the Baylor appellees' appellate briefs and appendices. We first address the motions to strike, and then address Smalling's issues as necessary to resolve them.

**A. The Motions to Strike**

Smalling filed two motions to strike: (1) a motion to strike portions of St. Luke's brief and appendix, and (2) a motion to strike portions of the Baylor appellees' brief and appendix. We deny both.

1. *The Motion to Strike Portions of St. Luke's Brief and Appendix*

In her motion directed to St. Luke's, Smalling complains that St. Luke's brief contains a section not authorized by the rules of appellate procedure, lacks appropriate record references, inappropriately refers to her deposition testimony, is argumentative in sections that should not contain argument, cites a medical dictionary not part of the record, and incorrectly cites a case. She further complains that St. Luke's entire appendix should be stricken because the documents it contains are not a part of the record.

▪ With minor exceptions, an appellee's brief must conform to the requirements of Rule 38.1 of the Texas Rules of Appellate Procedure. Tex.R.App. P. 38.2. However, the briefing rules are to be construed liberally; "substantial compliance" is sufficient. *See* Tex.R.App. P. 38.9. We

have reviewed St. Luke's brief and appendix and do not find the type of flagrant violations that may result in striking the complained-of portions. For example, Smalling complains that St. Luke's "Introduction and Summary" section is not authorized by the rules. However, the briefing rules do not specifically limit a brief to the stated sections, *see* Tex.R.App. P. 38.1, 38.2, nor do they prohibit inclusion of an introduction. Moreover, the section may assist the court in understanding the issues from this appellee's perspective.

▪ Similarly, we find unavailing Smalling's complaint that statements in St. Luke's "Factual Background" section violate Rule 38.1(f) because they are inappropriately argumentative. For example, Smalling claims that a heading is inappropriately argumentative because it states the trial court "properly" dismissed her claims. This and the other statements she complains of are not so overly argumentative that they must be stricken from the brief. Likewise, Smalling's complaint that a case citation incorrectly names a party and fails to reflect that it was "not designated for publication" does not require that we strike the citation and its accompanying argument; although counsel and litigants should strive to cite cases and other authorities correctly, the failure to do so in this case does not necessitate striking portions of the brief. The court is capable of evaluating what, if any, value to assign the case.

▪ As for Smalling's complaints about St. Luke's appendix, St. Luke's requested supplementation of the record to include all of the documents contained in the appendix, and merely included them in an appendix for this court's convenience. Additionally, the documents Smalling asks us to strike are motions and responses relevant to Smalling's appellate issues, includ-

ing St. Luke's motion to dismiss pursuant to Article 4590i—a primary subject of her appeal. The record may properly be supplemented with such documents and they may be included in an appendix. See Tex. R.App. P. 34.5(c)(1), (3) (supplementation of clerk's record); 38.1(j)(2) (optional contents of appendix).

We have reviewed carefully the matters raised in Smalling's motion, including her other complaints not directly addressed above, and deny her motion to strike portions of St. Luke's brief and appendix.

### 2. The Motion to Strike Portions of the Baylor Appellees' Brief and Appendix

Next, we address Smalling's motion to strike portions of the Baylor appellees' brief and appendix. Smalling makes many of the same types of complaints as those discussed above about the brief the Baylor appellees originally submitted. However, that brief was returned unfiled because it exceeded the page limit. The Baylor appellees then submitted an amended brief that did not exceed the page limits. Smalling did not file another motion to strike, nor did she amend her existing motion to address the amended brief. Therefore, we deny this motion as moot.

### B. Does the MLIIA Apply to Smalling's Claims?

In her first issue, Smalling contends the trial court erred in dismissing her claims for failing to file the expert report required by the MLIIA because no provider-patient relationship existed between Skyler and appellees, and because the claims were not "health care liability claims" subject to the MLIIA.

### 1. The Medical Liability and Insurance Improvement Act

To resolve Smalling's first issue, we must determine whether she has alleged claims that are health care liability claims as defined in the former MLIIA.[2] The MLIIA, found at article 4590i of the Texas Revised Civil Statutes, defines a health care liability claim as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in contract or tort.

Tex.Rev.Civ. Stat. Ann. art. 4590i, § 1.03(a)(4). If Smalling's claims are health care liability claims as defined in the MLIIA, then she was obliged to comply with the MLIIA's expert report requirements and the trial court did not err in dismissing her claims on this basis. See id. § 13.01(d), (e)(3).

■■■ The Texas Supreme Court's test as to whether a claim is a health care liability claim subject to the MLIIA is to show that a plaintiff cannot win her case without proving a breach of an accepted standard of medical or health care. See MacGregor Med. Ass'n v. Campbell, 985 S.W.2d 38, 41 (Tex.1998); Sorokolit v. Rhodes, 889 S.W.2d 239, 242 (Tex.1994). A claim is also a health care liability claim if the act or omission alleged in the complaint is an inseparable part of the rendition of medical or health care services. See Walden v. Jeffery, 907 S.W.2d 446, 448 (Tex.1995) (per curiam). The court "looks

---

**2.** Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01–12.01, 1977 Tex. Gen. Laws 2039–2053 (former Tex.Rev.Civ. Stat. art. 4590i), repealed by Act of June 2, 2003, 78th Leg., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (revised and codified at Tex. Civ. Prac. & Rem.Code §§ 74.001–.507). Because former 4590i governs this case, we will cite to the article.

to the underlying nature of the claim to determine its true character and whether it is actually a health care liability claim or something else." *Gomez v. Matey,* 55 S.W.3d 732, 735 (Tex.App.-Corpus Christi 2001, no pet.) (citing *Sorokolit,* 889 S.W.2d at 242). In doing so, the court is not bound by the plaintiff's own characterization of the claims. *Buck v. Blum,* 130 S.W.3d 285, 291 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Plaintiffs cannot use artful pleading to avoid the MLIIA's requirements when the essence of the suit is a health care liability claim. *Garland Comty. Hosp. v. Rose,* 156 S.W.3d 541, 543 (Tex.2004).

### 2. *Standard of Review*

■ A dismissal under the MLIIA is generally reviewed under an abuse of discretion standard. *See Buck,* 130 S.W.3d at 290; *Ponce v. El Paso Healthcare Sys., Ltd,* 55 S.W.3d 34, 36 (Tex.App.-El Paso 2001, pet. denied). However, to the extent resolution of this issue requires interpretation of statute itself, our review is de novo. *See Buck,* 130 S.W.3d at 290; *Gomez,* 55 S.W.3d at 735.

### 3. *Application of The MLIIA to Smalling's Claims*

#### a. *A Provider or Physician–Patient Relationship is Not the Test.*

Smalling first contends that her claims are not health care liability claims because no health care provider or physician-patient relationship exists between Skyler and appellees. *See Lopez v. Aziz,* 852 S.W.2d 303, 305 (Tex.App.-San Antonio 1993, no writ) (stating that "article 4590i . . . implicitly recognizes that a physician-patient relationship must exist before a

health care liability claim may be asserted"). She appears to base this contention on the express allegations in her pleadings that no such relationship existed with appellees and she never authorized or consented to medical treatment by appellees for Skyler. She also points to Dr. Gardner's deposition testimony, which she contends confirms her allegations.[3] However, this is not the standard by which the trial court determines whether a claim is a health care liability claim.

■ As discussed above, neither a plaintiff's characterization of her causes of action nor the physician's opinion as to whether he has a duty to provide medical care to a patient is dispositive of whether the MLIIA applies. Rather, the court's focus is whether the essence of the claim asserted by the plaintiff involves departures from accepted standards of medical care. As we discuss further below, we find that Smalling's claims are in essence claims directed to the care or lack of care Skyler received from appellees. We also note that all appellees alleged the applicability of the MLIIA in their original and amended answers, which would be inconsistent with a denial that such a relationship exists. Therefore, we do not find her assertion that no provider or physician-patient relationship exists sufficient, in and of itself, to render the MLIIA inapplicable.

#### b. *Smalling's Claims are Health Care Liability Claims.*

We now turn to Smalling's contention that her claims are not health care liability claims. Smalling asserts that her claims are not directed to any medical care appellees provided to Skyler; instead, she alleges that Skyler was given no medical care

---

**3.** In his deposition, when asked if a physician-patient relationship existed between Skyler and him, Dr. Gardner testified, "I guess as I understand it, no." He also testified that the neonatologists, rather than him or the other Baylor obstetricians or physicians, would have been Skyler's doctor after birth.

and appellees were not authorized or under any duty to treat her. She contends the essence of her grievances is that Skyler should not have been at St. Luke's, as no one there had authority or consent to do anything for her other than to allow the TCH transport team to take her to its facility, or even to have custody of her, and that appellees lied about her time of death. These factual allegations, Smalling asserts, "are the basis of [her] kidnapping, false imprisonment, child abduction, fraud, misrepresentation, common law negligence, breach of contract, deceptive trade practices, and conspiracy claims." Additionally, she asserts that these claims are not health care liability claims because they are not an inseparable part of the rendition of medical services. We disagree.

### (i) Smalling's allegations

In her first amended original petition, the actions Smalling complains of

> are all centered around the concerted efforts and conspiracy by [appellees] *to deny appropriate non-medical, care custodial, or palliative care to Baby Skyler;* to obstruct and prevent Skyler from being transferred to Texas Children's Hospital *where she could receive appropriate medical care,* and to prevent Plaintiff and the family from knowing the status, location, and condition of Skyler or even the fact that she was *still alive.* These actions deprived Plaintiff and her family of the right to have contact with her daughter and *to make informed decisions about the type of care which her daughter might require and should have.*

Smalling also alleges that she gave explicit instructions that Skyler be transported to TCH, but in any event, she alleges there is an "implicit if not explicit agreement that upon birth, *the baby would be admitted to some nursery and would at all times be in the care of* either the family or *the nursery room nurses,* and that Plaintiff and the family would be fully advised of the location of the baby *and of her condition.*" Additionally, she alleges, there is an "implicit if not explicit agreement that any newborn will be given *not only any appropriate medical care, should any be required, but basic humane custodial or palliative care.*" She also alleges that she and the family were told Skyler died almost immediately after birth, which was untrue, and that they failed to send Skyler to TCH or any nursery or special infant unit while she was alive. As a result, Smalling alleges, Skyler received "no proper attention, comfort, or custodial or palliative care" and deprived Smalling and her family of the ability to spend time with Skyler while she was alive and to make decisions about what was best for Skyler and for them.

All of Smalling's claims are based on variations of these complaints. For example, both Smalling's breach of contract and deceptive trade practices claims are based on the appellees' decision not to transport Skyler to TCH as Smalling instructed. She complains the appellees breached their contract with her because she did not authorize them to "place Skyler in whatever secret location they chose to place her," to keep her condition and the fact she was still alive from Smalling and her family, and to usurp Smalling's right to "make decisions about what was best" for Skyler. The negligence and negligent misrepresentation claims are based on appellees' alleged "refusing to and interfering with the transport of Skyler to Texas Children's Hospital, in sending Skyler off to some secret location instead, in denying Baby Skyler even the most basic comfort or custodial or palliative care, in failing to notify Plaintiff and the family that Skyler continued to live as long as she did after her birth, and in other respects." The fraud, fraudulent misrepresentation, and

fraudulent inducement claims are based on the same actions, and in connection with those claims she alleges, among other things, that appellees "did not and have never had any intention or desire to allow a baby in the condition of Skyler to be transported to [TCH] ... or to accurately advise the parents or other family members of the whereabouts and condition of babies such as Skyler *who in the opinion of the obstetrician are deemed to [be] 'non-viable.'* "

### (ii) Smalling alleges health care liability claims

■ We find that the essence of all of these complaints is the treatment or lack of treatment Skyler received. *See MacGregor*, 985 S.W.2d at 40–41. Appellees' decision not to transport Skyler to TCH as arranged, and whether that decision was appropriate, implicates Skyler's diagnosis, care, and/or treatment. Likewise, any treatment or lack of treatment Skyler received while she remained at St. Luke's implicates the standard of care because any decision regarding the appropriateness or inappropriateness of the treatment requires one to consider the duties a specialist owes to a patient and what an ordinarily prudent physician or health care provider would do under the circumstances. *See Rose*, 156 S.W.3d at 543–44; *Savage v. Psychiatric Inst. of Bedford, Inc.*, 965 S.W.2d 745, 752–53 (Tex.App.-Fort Worth 1998, pet. denied); *Mulligan v. Beverly Enters.-Tex. Inc.*, 954 S.W.2d 881, 884 (Tex.App.-Houston [14th Dist.] 1997, no pet.). Therefore, we hold that these claims are health care liability claims subject to the MLIIA's expert report requirements.

### (iii) Response to Smalling's characterization of her allegations

Although we already have concluded that her claims are health care liability claims subject to the MLIIA, we will respond to Smalling's main arguments in support of her contrary position. First, Smalling contends that appellees were not "authorized or expected to" provide medical services to Skyler, and therefore their duty to Skyler was only a duty of ordinary care. According to Smalling, appellees should have acted as any reasonable person—without medical training—would act after delivering a baby in a non-hospital setting. She claims the actions that should have been taken to assist Skyler, such as wrapping her in a blanket or suctioning her, do not require medical knowledge or expertise because babies have been delivered by countless lay people for centuries, and such things are within the knowledge of ordinary people.

■ However, this case does not involve the routine delivery and treatment of a baby by ordinary people. This case involves the hospital delivery of an extremely premature infant, whose prognosis was unquestionably poor. In such a case, the range of complications, including the possibility that the child may die or, if she lives, may have profound disabilities, implicates specialized medical knowledge that requires medical expert testimony. And, Smalling's situation was in no way equivalent to a home delivery by a lay person; she was admitted to St. Luke's as a patient with the intention of receiving medical care and services for herself and her baby. We decline to apply the standard of care urged by Smalling.

■ Smalling also places considerable emphasis on her allegation that, in effect, appellees lied to her that Skyler was dead, when, in fact, the baby lived for almost two hours. She contends that no expert testimony is required to determine

the time of Skyler's death, because it is stated in the medical records, and an expert is not needed to inform a jury that it was wrong to lie. However, a plaintiff's allegations that misrepresentations were "knowingly" made is not determinative when analyzing the underlying nature of a claim. *Gomez,* 55 S.W.3d at 735; *Savage,* 965 S.W.2d at 752. Instead, we focus on whether the action is controlled by the MLIIA. *Gomez,* 55 S.W.3d at 735. We acknowledge that whether this claim is controlled by the MLIIA presents a closer question, but conclude that the erroneous or wrongful assertion that Skyler was dead when she was not requires Smalling to prove what the baby's status or condition was after birth, including whether she was dead or dying, and whether making the statement was a deviation from the standard of care. This conclusion is supported by Smalling's own petition, which implies, in connection with her fraud and fraudulent misrepresentation claims, that appellees Dr. Gardner and Dr. Zacharias intentionally withheld information on Skyler's condition from Smalling and her family because they deemed Skyler "non-viable."

▮ At oral argument, Smalling also emphasized that her complaint was not that appellees failed to care for Skyler, but that appellees deprived Skyler's parents of the opportunity to make decisions regarding her care. We conclude, however, that when and how appellees determined Skyler's prognosis and chose to discuss that prognosis with Smalling or her family is inseparable from appellees' decisions regarding treatment or the lack of treatment. It may be that appellees' failure to inform Smalling and her family about Skyler's status after her birth was wrong, but to prove they were wrong, Smalling must show that appellees did not act as an ordinarily prudent physician or health care provider would act in similar circumstances.[4] Therefore, we find Smalling's claims are health care liability claims.[5]

**(iv) Smalling's contention that Texas provides special legal protections for infants like Skyler further demonstrates that her claims are health care liability claims**

Finally, we address the initial argument Smalling makes in her brief—that Texas provides special legal protections for infants like Skyler and that these protections apply regardless of appellees' status as medical or health care providers. In this argument, Smalling points to this court's opinion in *HCA, Inc. v. Miller ex rel. Miller,* 36 S.W.3d 187 (Tex.App.-Houston [14th Dist.] 2000), *aff'd,* 118 S.W.3d 758 (Tex.2003), the Advance Directives Act,[6] and the Texas Penal Code's prohibitions against injuring, abandoning or endangering a child.[7] Smalling argues that these authorities prohibit the actions appellees allegedly took with regard to Skyler "whether or not they were properly her health care providers and whether or not her parents consented to their actions."

4. Smalling's contention that her claims are not directed to the care Skyler received are belied by the numerous references in her petitions to appellees' failure to take her to a nursery or other appropriate place and care for her.

5. We caution, however, that our decision here is not to be read to imply that any statement made by a health care or medical provider automatically implicates a decision regarding diagnosis, treatment, or care so as to invoke the MLIIA. Our decision is limited to the facts before us.

6. TEX. HEALTH & SAFETY CODE §§ 166.001–.166.

7. *See* TEX. PEN.CODE §§ 22.04 (criminal offense of injury to a child, elderly individual, or disabled individual), 22.041 (criminal offense of abandoning or endangering a child).

However, in making this argument, Smalling's assertions demonstrate that her real complaint is about the care or lack of care Skyler received from appellees.

 For example, Smalling contends *Miller* stands for the proposition that an infant must be evaluated at birth and, unless legal requirements are met, "life-sustaining treatment must be provided." She also asserts that, because Skyler was not certified as terminal and Skyler's parents gave no written approval to withhold treatment, "the law requires that all available treatment be provided to Skyler." And, she charges that Skyler was purposefully abandoned and endangered because appellees determined that her life was not worth living, and so "left her to die without anything being done to help her" and did not provide her with "reasonable and necessary care." Such claims relate directly to the health care Skyler was or was not provided. Smalling cannot circumvent the MLIIA merely by recasting her claims as other causes of action. *See Gormley v. Stover*, 907 S.W.2d 448, 450 (Tex.1995) (per curiam); *Walden*, 907 S.W.2d at 448. Therefore, we hold that the MLIIA applies to Smalling's claims, and the trial court did not err in dismissing her claims for failing to file an expert report as required.

Smalling's first issue is overruled.

## C. Dismissal of Smalling's Claims by Motion Rather Than Summary Judgment Was Not Improper.

In Smalling's second issue, she asserts the trial court used the wrong procedure to dispose of her case. Rather than granting a motion to dismiss and entering an order of dismissal, she claims the court should have disposed of the case via summary judgment procedures. As we explain below, we reject this assertion because a motion to dismiss was the appropriate procedural vehicle to dispose of her claims. In fact, it is the procedure contemplated by the statute.

The MLIIA requires that "[a] report must be provided for each physician or health care provider against whom a claim is asserted, and must be provided no later than the 180th day after the date on which a health care liability claim is filed, unless a statutory extension applies." *Gomez*, 55 S.W.3d at 734 (citing Tex.Rev.Civ. Stat. art. 4590i, § 13.01(d)). If the claimant fails to comply with the deadline, upon proper motion by the defendant, the trial court is required to enter sanctions that include dismissing the action with prejudice. *Id.* (citing Tex.Rev.Civ. Stat. art. 4590i, § 13.01(e)(3)).

 Smalling asserts she was entitled to the procedural and substantive safeguards that summary judgment procedure would have provided. However, the trial court did not dismiss Smalling's claims because it determined the *substance* of her claims lacked merit and could not succeed as a matter of law. Rather, the trial court dismissed Smalling's claims because the MLIIA applied to her claims and Smalling had not satisfied the *procedural* requirements. When a plaintiff brings health care liability claims but fails to file an expert report, on a defendant's motion, the MLIIA mandates dismissal and a trial court has no discretion not to dismiss. Tex.Rev.Civ. Stat. art 4590i, § 13.01; *George v. Houston Eye Assocs.*, No. 14–02–00629–CV, 2003 WL 22232651, at *2 (Tex.App.-Houston [14th Dist.] Sept. 30, 2003, pet. denied) (not designated for publication) ("Importantly, the statutory language within the Act is mandatory, and where a plaintiff fails to satisfy one of the procedural options available, a trial court has no discretion . . . .") (citing *Thomas v. Ben Taub Hosp.*, 63 S.W.3d 908, 911 (Tex. App.-Houston [14th Dist.] 2002, no pet.)).

We cannot say the trial court erred in doing exactly what the MLIIA requires.[8]

Also, requiring summary judgment proceedings in these circumstances would be inappropriate. We agree with Smalling that the trial court's decision to grant appellees' motions to dismiss necessarily involved a determination that the MLIIA applied to her claims. But, to do this, the trial court need only examine Smalling's pleadings and the underlying nature of her claims to determine whether the MLIIA applied. *See Gomez*, 55 S.W.3d at 735 ("Gomez was not required to produce any evidence in response to the appellee's motion, but was required to provide pleadings that sufficiently state claims falling outside the purview of the MLIIA."). Summary judgment procedures and proof would not assist the trial court in this task, but would needlessly burden the parties and the court. The MLIIA does not require this and we decline to engraft this requirement onto the MLIIA. We overrule Smalling's second issue.

**D. Appellees Did Not Waive the Right to Assert that Smalling's Claims are Health Care Liability Claims, Nor Are They Estopped to Assert This.**

In her third issue, Smalling contends appellees are estopped and have waived the right to insist on an expert report under the MLIIA because they denied the existence of a physician-patient relationship between them and Skyler. In making this argument, Smalling does not distin-guish between the Baylor appellees and St. Luke's.

Smalling does not identify any evidence to support her contention. Presumably, with regard to the Baylor appellees, she is referring to their responses to Smalling's requests for disclosure and Dr. Garland's deposition testimony. In discovery, Smalling asked the Baylor appellees to identify the legal theories and factual bases of their claims or defense. The relevant portions of their responses is as follows: "Drs. Zacharias and Gardner delivered Skyler, but they were not responsible for her medical care post-delivery. The baby's care transferred to the nurses and neonatologists on duty at the time." When asked at deposition if a physician-patient relationship existed between Skyler and him, Dr. Gardner testified, "I guess as I understand it, no." He also testified that the neonatologists, rather than him or the other Baylor obstetricians or physicians, would have been Skyler's doctors after birth.

 Waiver is largely a matter of intent, and "intent must be clearly demonstrated by the surrounding facts and circumstances." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex.2003) (per curiam). "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with an intent to rely upon such right." *Id.* (citing *Md. Cas. Co. v. Palestine Fashions, Inc.*, 402 S.W.2d 883, 888 (Tex.1966)). In *Jernigan*, the court held that, as a matter of law, a defendant physician did not waive the right to object that the plaintiff failed

---

**8.** Smalling cites to a case from this court in which we held that a trial court could not dismiss a party's substantive claims in response to a general demurrer. *See Centennial Ins. Co. v. Commercial Union Ins. Cos.*, 803 S.W.2d 479, 482 (Tex.App.-Houston [14th Dist.] 1991, no writ). However, as we already have stated, Smalling's case was not dismissed because the *substance* of her claims

lacked merit; her case was dismissed because she failed to satisfy the procedural requirements. Deciding that her claims were subject to the MLIIA did not require the trial court to resolve fact issues. It merely required the trial court to determine the true nature of her claims and whether they involved a breach of the accepted standard of care.

to file adequate expert reports as required by the MLIIA even though he waited over 600 days after receiving the reports to object, participated in discovery, filed a motion for summary judgment on other grounds, and amended his answer to delete references to the plaintiff's failure to follow statutory prerequisites to suit. *Id.* at 157.

 Here, the trial court could have concluded that the Baylor appellees' discovery responses and Dr. Gardner's testimony "were not so inconsistent with an intent to assert the right to dismissal under section 13.01(e) of the MLIIA as to amount to a waiver of that right." *See id.* at 157–58. Additionally, the Baylor appellees consistently invoked the protections of the MLIIA in their original and amended answers.[9] Therefore, we reject Smalling's waiver contention.

 As to St. Luke's, Smalling offers no evidence it made any representations that would be inconsistent with a waiver of the right to assert the protections of the MLIIA. Additionally, St. Luke's asserted the protections of the MLIIA in its original answer. Indeed, Smalling's only specific assertion against St. Luke's is that it should have informed Smalling, in response to her requests for disclosure, that it disputed the statements in her pleadings. We conclude that, as a matter of law, St. Luke's has not waived and is not estopped to assert the right to move to

dismiss Smalling's claims based on her failure to file an expert report.

Smalling also contends appellees are estopped to assert the MLIIA because they adopted an inconsistent position to Smalling's detriment by claiming no physician-patient relationship, and then contradicting that statement by proceeding with a motion to dismiss under the MLIIA "as if the relationship existed." This is essentially the same argument as the waiver argument, and for the same reasons, we conclude the appellees are not estopped to assert the protections of the MLIIA.

We overrule Smalling's third issue.

## E. The Trial Court Did Not Err in Denying Smalling's Motion for Continuance and Discovery Requests.

In her fourth issue, Smalling contends generally that the trial court abused its discretion in quashing the deposition notices for several doctors and nurses, denying her motions to compel answers to interrogatories and requests for production, denying her request to inspect St. Luke's premises, and failing to grant her request for a continuance to obtain the discovery sought.[10] Smalling contends broadly that she was entitled to the discovery and the trial court denied her discovery rights "without any grounds whatsoever." However, her arguments fail to demonstrate reversible error.

9. In their motion to dismiss, the Baylor appellees represented to the trial court that Dr. Gardner and Dr. Zacharias oversaw Smalling's labor and delivery, neonatologists from Baylor College of Medicine assessed Skyler after she was born, and Dr. Gardner agreed with the neonatologists' assessment that Skyler was not viable. The Baylor appellees also expressly state in their reply to Smalling's response to the motion to dismiss that "[t]he medical records, Dr. Gardner's deposition testimony, and Plaintiff's deposition testimony

clearly establish that medical care was provided to Ms. Wortham–Smalling and Skyler by Baylor Defendants and the St. Luke's nurses."

10. The record shows that the trial court granted Smalling's motion for continuance, in part, to allow her an additional week to respond in writing to appellees' motion to dismiss.

Smalling's deposition notices and appellees' motions to quash were filed at or near the time appellees filed their motions to dismiss. The trial court did not err in quashing the notices for the depositions until after it ruled on the motions to dismiss. Indeed, permitting such discovery and then granting appellees' motions would have resulted in a waste of time, money, and effort for all parties. And, because the trial court could determine the essence of Smalling's claims from her pleadings, her ability to defend against the motions to dismiss was not affected by the trial court's rulings on her other discovery motions.[11] Therefore, the trial court did not abuse its discretion in denying Smalling's motions for continuance and to compel discovery, or in quashing the notices for the depositions.

### F. Dismissal of Smalling's Claims Does Not Violate the Open Courts and Special Laws Provisions of the Texas Constitution.

In her fifth issue, Smalling contends that, as applied to her, the dismissal of her claims for failing to comply with section 13.01 of the MLIIA violates the open courts[12] and special laws[13] provisions of the Texas Constitution. Smalling contends she is denied access to the courts in violation of the open courts provision because, even though her claims are not health care liability claims subject to the MLIIA, they were dismissed for failure to comply with the MLIIA's requirements.

She also contends the special laws provision is violated because applying the MLIIA's requirement of expert reports to claims unrelated to the practice of medicine effectively immunizes physicians and health care providers from suit.

The fallacy of both contentions is Smalling's assertion that her claims are not health care liability claims. As discussed above, we have determined that her claims are health care liability claims and, as such, are subject to the MLIIA. *See* TEX.REV.CIV. STAT. art. 4590i, § 1.03. Smalling's claims were dismissed not because of the creation of an "impossible condition" imposing an unacceptable barrier to the courts as she contends, but because she intentionally failed to produce an expert report as the MLIIA requires. *See id.* § 13.01(d); *McGlothlin v. Cullington*, 989 S.W.2d 449, 452–53 (Tex.App.-Austin 1999, pet. denied). "Texas law is clear that when a litigant fails to comply with the cost bond or expert report provisions of [the MLIIA], the dismissal of the action pursuant to § 13.01(d) does not violate the due process and open courts provisions of Article I of the Texas Constitution." *Schorp v. Baptist Mem'l Health Sys.*, 5 S.W.3d 727, 737 (Tex.App.-San Antonio 1999, no pet.).

Additionally, to establish an open courts violation, Smalling must prove that the expert report requirement in section 13.01 of the Act "is unreasonable or arbitrary when balanced against the statute's purpose and basis." *Shah v. Moss*, 67 S.W.3d

---

11. In her reply brief, Smalling concedes that, to the extent the trial court could determine whether her claims were health care liability claims from her pleadings, she has not been harmed by a lack of discovery.

12. Article I, section 13 of the Texas Constitution provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall

have remedy by due course of law." TEX. CONST. art. I, § 13.

13. Article III, section 56 of the Texas Constitution provides that "[t]he Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law," including any law "for limitation of civil or criminal actions." TEX. CONST. art. III, § 56(a)(28).

836, 842 (Tex.2001); *Schorp*, 5 S.W.3d at 737. Smalling has made no such showing. Her health care liability claims require expert testimony at trial concerning the applicable standard of care for the care and treatment of an extremely premature infant. As this court previously has held, the MLIIA "does not violate the open courts provision by requiring an expert report sooner rather than later in the litigation." *Mocega v. Urquhart*, 79 S.W.3d 61, 64 (Tex.App.-Houston [14th Dist.] 2002, pet. denied).

■ Likewise, contrary to Smalling's contention regarding the special laws provision, the MLIIA does not immunize physicians and health care providers from suit "by requiring expert reports for claims against [them] unrelated to the practice of medicine." Instead, it unambiguously requires expert reports only when, as in this case, a plaintiff files suit against "a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety." *See* Tex. Rev.Civ. Stat. art. 4590i, §§ 1.03, 13.01(d).

■ The Legislature has broad authority to create classifications for legislative purposes, so long as they have a reasonable basis and operate equally on all within the class. *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 450 (Tex.2000); *see also Maple Run at Austin Mun. Util. Dist. v. Monaghan*, 931 S.W.2d 941, 945 (Tex. 1996). The MLIIA treats all physicians and health care providers equally, and rationally relates to the interest of the State in ensuring that medical practitioners were not "being placed in the situation of defending frivolous claims at a high cost" to the health care system. *Schorp*, 5 S.W.3d at 736; *See also McGlothlin*, 989 S.W.2d at 453; Tex.Rev.Civ. Stat. art. 4590i, § 1.02 (detailing the findings and purposes of the MLIIA).

Therefore, we overrule Smalling's fifth issue.

## G. The Trial Court Was Not Required to File Findings of Fact and Conclusions of Law.

■ In Smalling's sixth issue, she complains the trial court failed to file findings of fact and conclusions of law. Again, this court previously has held that, when a trial court dismisses a claim because the plaintiff failed to comply with the MLIIA's procedural requirements, it is *appropriate* to file findings of fact and conclusions of law, but the trial court is not *required* to do so. *See Mocega*, 79 S.W.3d at 63–64 (holding that findings of fact and conclusions of law were appropriate but not required because a dismissal under section 13.01 of the MLIIA is a sanction).

■ Smalling urges us to distinguish *Mocega* because, in her case, the trial court had to determine that the MLIIA applied to her claims before entertaining a motion to dismiss under that article. Without findings of fact and conclusions of law on this threshold decision, Smalling contends, the reasons why the trial court determined the claims were health care liability claims remain a mystery and meaningful appellate review may be impaired. Although we recognize that findings and conclusions may be a useful guide for the appellate court, we are unpersuaded by Smalling's cursory argument.

Moreover, our holding in *Mocega* was informed in part by the Texas Supreme Court's opinion in *IKB Industries (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 442 (Tex.1997). In *IKB Industries*, the Court explained that findings of fact and conclusions of law are not required when a judgment is rendered as a sanction because (1) they are often unnecessary, (2) requiring them in every case would unduly

burden trial courts, and (3) appellate courts are not obliged to give them the same level of deference. *See id.* Here, in *ruling on appellees' motions to dismiss*, the trial court could have determined only one of two possible interpretations of the law: either Smalling's claims were recast health care liability claims (and thus dismissal would be proper) or the claims were not health care liability claims (and thus the motions would have been denied). The trial court's decision to dismiss Smalling's claims presupposes that Smalling asserted health care liability claims. We are persuaded that the Texas Supreme Court's reasoning in *IKB Industries* applies here, and therefore decline to distinguish *Mocega* as Smalling urges. Accordingly, we hold the trial court did not abuse its discretion by not filing findings of fact and conclusions of law. *See Mocega*, 79 S.W.3d at 63–64.

We overrule Smalling's sixth issue.

## H. Did the Trial Court Abuse Its Discretion in Making Fact Findings?

In her seventh issue, Smalling claims the trial court abused its discretion because of "overwhelming and even uncontradicted evidence that [the MLIIA] did not apply." Smalling raises this issue as an alternative issue "[t]o the extent that any part of the trial court's decision could be said to implicitly include factual determinations." However, Smalling's two-paragraph argument fails to identify any specific implied fact findings she contends the trial court may have made erroneously, and instead merely suggests that the trial court could only have concluded that the MLIIA did not apply to her claims because

"[n]o other decision is reasonably possible." However, we already have determined that, based on Smalling's pleadings, the trial court correctly concluded that Smalling's claims were subject to the expert report requirements of the MLIIA. We overrule Smalling's seventh issue.

## I. The Trial Court's Dismissal of Smalling's Claims by a Take–Nothing Judgment Does Not Require Reversal or Reformation.

■ Smalling asserts in her eighth and final issue that the trial court erred in entering a take-nothing judgment in response to the motions to dismiss and requests that we reverse or reform the dismissal order.[14] We decline to do so, however, because Smalling failed to preserve the issue for review. Smalling does not direct us to any part of the record showing that she brought the issue to the trial court's attention and obtained a ruling or a refusal to rule. *See* TEX.R.APP. P. 33.1(a). We also have reviewed the record and cannot find that she raised the issue below. Therefore, the issue is waived.

## III. Conclusion

We hold that Smalling's claims are health care liability claims subject to the expert report requirements of the former MLIIA, and the trial court did not err in dismissing her claims against appellees with prejudice for failing to timely file any expert reports. We also hold that appellees were not estopped and did not waive the right to insist on expert reports. We hold that the trial court did not err in

---

14. St. Luke's correctly points out that the trial court's order dismissing Smalling's claims against St. Luke's does not contain 'take-nothing' language ("Plaintiff's claims against [St. Luke's] are dismissed pursuant to Article 4590i with prejudice as to the refiling of same."). The dismissal order for the Baylor appellees, however, states that "Plaintiff shall take nothing from these Defendants." We interpret Smalling's eighth point of error as a complaint only about the order dismissing her claims against the Baylor appellees.

denying Smalling's discovery requests and motion for continuance to conduct discovery. We further hold that the dismissal of Smalling's claims does not violate the open courts or special laws provisions of the Texas Constitution. Additionally, the trial court did not err in failing to file findings of fact and conclusions of law and did not abuse its discretion in making any fact findings. Finally, Smalling waived any complaint that the trial court erroneously entered a take-nothing judgment.

The trial court's judgment is affirmed.