**TEXAS CYPRESS CREEK HOSPITAL, L.P. d/b/a Cypress Creek Hospital, Appellant,**

v.

**Marshelia HICKMAN, Individually and as Personal Representative of the Estate of Jayme R. Cox, Appellee.**

**No. 14–10–00149–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 2, 2010.

Ryan Lee Clement, Houston, for appellant.

Martin Jay Cirkiel, Round Rock, for appellee.

Panel consists of Justices ANDERSON, FROST, and BROWN.

## OPINION

JEFFREY V. BROWN, Justice.

In this accelerated interlocutory appeal, appellant Texas Cypress Creek Hospital, L.P. d/b/a Cypress Creek Hospital ("Cypress Creek"), complains of the trial court's denial of its motion to dismiss the healthcare-liability claims of appellee Marshelia Hickman, individually and as personal representative of the Estate of Jayme R. Cox, on the grounds that Hickman's expert reports do not satisfy the expert-report requirements of Texas Civil Practice and Remedies Code chapter 74. Hickman responds that she was not required to provide expert reports because her claims are not healthcare-liability claims, but instead are based on violations of the Patient's Bill of Rights as provided in Texas Health and Safety Code chapter 321. We reverse and remand.

## I

On April 26, 2007, Jayme Cox[1] voluntarily admitted herself to Cypress Creek. She had been diagnosed with bipolar disorder, post-traumatic stress disorder, and attention deficit hyperactivity disorder, and she was determined to be a suicide risk. At the time of her admission, Cox's medications included Effexor XR, Eskalith, Adderall, Campral, Zyprexa, Provera, Topamax, and Xanax. After admission, her medications were changed slightly and Ambien CR was added to her regimen. Cox was also treated with electroconvulsive therapy ("ECT").

During her admission, Cox injured her left knee and, on May 2, she was prescribed hydrocodone for the pain. On May 3, she was also prescribed Oxycontin for one night, in addition to her routine medications. That evening, Cypress Creek staff checked on Cox periodically—about every thirty minutes. Around 2:00 a.m. on May 4, Cox's roommate found her lying "prone" in her bed, with her feet on the bed and her head and upper body on the floor. The roommate informed a nurse, who went to Cox's room and discovered that Cox had no pulse. The nurse called a "Code Blue," started CPR, and called 911. Other health care providers, including emergency medical services personnel, also participated in the efforts to resuscitate Cox. The efforts were unsuccessful and Cox was declared dead at 3:04 a.m. An autopsy was later performed, and the toxicology results showed that Cox died as a result of Zyprexa toxicity.

In July 2008, Hickman, Cox's mother, sued Cypress Creek, alleging healthcare-liability claims, common-law negligence, violations of the Mental Health Code, violations of the Nursing Practice Act, wrongful death, and a survival action. Hickman had previously notified Cypress Creek that she was asserting a "negligence health care liability claim" as defined by Civil Practice and Remedies Code chapter 74, for "acts or omissions of negligence and/or malpractice in the health care treatment and safety or lack of care, treatment, or safety"

---

1. Jayme's first name is sometimes spelled "Jamye" in the record, including in Hickman's amended petition, Grossman's report, and the autopsy report. Because the trial court's order being appealed and the parties' appellate briefs refer to "Jayme," however, we will do the same.

administered to or for Cox, and that such negligence "proximately resulted in the injuries and/or damages claimed herein."

In her original petition, Hickman alleged generally that Cypress Creek had a duty to provide "inpatient mental health care, physical health care, nursing care, medication administration and electroshock treatment services." She also alleged that Cypress Creek was negligent in its capacity as a health care provider "by failing to assure that [Cox] was maintained in a safe environment, such that she experienced a Zyprexa overdose and related respiratory and cardiac arrest; and further that such failure was a violation of the relevant professional standards for a reasonable and prudent mental health and substance abuse treatment facility operating in Harris County, Texas." Hickman also listed numerous specific acts and omissions by Cypress Creek which Hickman alleged proximately caused Cox's injuries, death, and resulting damages.

In an effort to comply with chapter 74's expert-report requirement, Hickman served Cypress Creek with the report of Janet A. Grossman, Ph.D., PMHCNS, BC, FAAN, and an autopsy report dated May 4, 2006. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a). In response, Cypress Creek filed a "Motion to Dismiss and Objections and Challenges to the Sufficiency of the Reports and the Qualifications of the Authors." In its motion, Cypress Creek argued that Grossman's report was insufficient because, among other things, Grossman was not a physician and therefore she was not qualified to opine on causation. *See id.* §§ 74.351(r)(5)(C), 74.403. Cypress Creek also argued that the autopsy report was insufficient as an expert report because it failed to address the applicable standard of care, the manner in which the care Cypress Creek failed to meet the standards, and the causal rela-

tionship between that failure and the injury, harm, or damages claimed. *See id.* § 74.351(r)(6).

Hickman responded to Cypress Creek's motion and filed a first amended petition in which she purported to delete any cause of action related to medical malpractice. She contended that, because the case no longer included medical-malpractice claims, Cypress Creek's complaints that her expert reports were insufficient under chapter 74 were now moot. Cypress Creek replied that Hickman's claims were in substance healthcare-liability claims that could not be recast as a different cause of action, and therefore the claims remained subject to the requirements of chapter 74. In a surreply, Hickman maintained that medical malpractice was no longer a part of the case and Cypress Creek's objections were therefore moot; she also argued that her claims against Cypress Creek were governed by Texas Health and Safety Code chapter 321, not Civil Practice and Remedies Code chapter 74, and therefore there was no need to provide any expert reports.

After a brief hearing, the trial court denied Cypress Creek's motion to dismiss. This appeal followed.

II

On appeal, Cypress Creek raises five issues: (1) Hickman's claims are healthcare-liability claims as defined by Texas Civil Practice and Remedies Code section 74.001(a)(13); (2) these healthcare-liability claims cannot be recast as a different cause of action in an effort to avoid the substantive and procedural statutory provisions and requirements of chapter 74; (3) the provisions of chapter 74 supersede in the event of any conflict with the provisions of Health and Safety Code chapter 321 and therefore Hickman is required to serve expert reports pursuant to Civil

Practice and Remedies Code section 74.351(a); (4) Grossman's report and the autopsy report are deficient because they do not meet the definition of an "expert report" under section 74.351(r)(6) and controlling case law; and (5) because the documents Hickman provided do not represent a good-faith effort, and because Hickman has attempted to avoid meeting these requirements rather than make any effort to provide sufficient expert reports, no thirty-day extension to cure should be provided and Hickman's claims should be dismissed.

In response, Hickman contends that her claims are civil-rights claims as contemplated by chapter 321 of the Texas Health and Safety Code and therefore are not healthcare-liability claims governed by chapter 74 of the Civil Practice and Remedies Code. Further, she contends, her claims are not "recast" but are based on sound rules of statutory construction, as Health and Safety Code chapter 321 is a separate civil-rights cause of action, it is not in conflict with chapter 74, and it does not require that she file an expert report pursuant to chapter 74. Hickman concedes that Grossman's report and the autopsy report do not meet the definition of an "expert report" as defined by section 74.351(r)(6), but argues that this concession is irrelevant as such a report is not required in civil rights claims filed under chapter 321, and therefore the trial court's judgment should be affirmed.

### III

#### A

A medical-malpractice plaintiff must timely serve on each defendant or each defendant's attorney one or more expert reports that set out (1) the applicable standard of care, (2) the manner in which the defendant's care failed to satisfy that standard, and (3) the causal relationship be-tween the defendant's failure and the injury or damages claimed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(a), (r)(6). The plaintiff may satisfy the statutory requirements by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider. *Id.* § 74.351(i). However, only a physician may give opinion testimony about the causal relationship between the claimed injury, harm, or damages and the alleged departure from the applicable standard of care. *See id.* § 74.351(r)(5)(C); *Kelly v. Rendon,* 255 S.W.3d 665, 675 (Tex.App.-Houston [14th Dist.] 2008, no pet.).

We review a trial court's denial of a motion to dismiss under section 74.351 for abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001); *Group v. Vicento,* 164 S.W.3d 724, 727 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Larson v. Downing,* 197 S.W.3d 303, 304–05 (Tex.2006); *Mem'l Hermann Healthcare Sys. v. Burrell,* 230 S.W.3d 755, 757 (Tex.App.-Houston [14th Dist.] 2007, no pet.). To the extent resolution of the issue before the trial court requires interpretation of the statute itself, we apply a de novo standard. *Mokkala v. Mead,* 178 S.W.3d 66, 70 (Tex.App.-Houston [14th Dist.] 2005, pet. denied).

#### B

■ Chapter 74 defines a healthcare-liability claim as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional

or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13). "Health care" is broadly defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to or on behalf of a patient during the patient's medical care, treatment, or confinement." Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(10).[2] A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical or health care services. See Diversicare Gen. Partner, Inc., v. Rubio, 185 S.W.3d 842, 848 (Tex.2005); Garland Comty. Hosp. v. Rose, 156 S.W.3d 541, 543 (Tex.2004).

In determining whether Hickman's claims are healthcare-liability claims, we examine the underlying nature of the claim and are not bound by the form of the pleading. Diversicare, 185 S.W.3d at 847; Sorokolit v. Rhodes, 889 S.W.2d 239, 242 (Tex.1994). We must focus on the essence of the claims and consider the alleged wrongful conduct and the duties allegedly breached, rather than the injuries allegedly suffered. Diversicare, 185 S.W.3d at 851. A healthcare-liability claim may not be recast as another cause of action to avoid the requirements of chapter

74. See id. Therefore, we are not bound by Hickman's characterization of her claims. See id.; Smalling v. Gardner, 203 S.W.3d 354, 363 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). We also consider whether expert testimony is necessary to prove Hickman's claims. See Diversicare, 185 S.W.3d at 851.

In her original petition, Hickman expressly recognized the essence and nature of her claims as healthcare-liability claims, and asserted that she had complied with the notice requirements of chapter 74. Further, the notice informed Cypress Creek of the following:

> Pursuant to Civil Practice and Remedies Code 74.051, NOTICE is hereby given to you that our above named client the family of Jamye Cox, is asserting a negligence health care liability claim, as defined by said statute, against you. This claim arises from the medical, surgical, or other health care provided by you to Jamye Cox on, before, or about May 04, 2006.

And, although Hickman amended her petition ostensibly to remove any healthcare-liability claims, the factual allegations on which her claims are based remained substantively unchanged.

According to the overview of the complaint contained in the amended petition, while Cox was a patient, she sought Cypress Creek's "professional expertise, judgment, skill, competence, advice and

---

2. In Chapter 74, the list of healthcare providers includes "a health care institution," which is further defined to include "a hospital." Tex. Civ. Prac. & Rem.Code Ann. § 74.001(11), § 74.001(12)(A)(vii). "Hospital" is defined as "a licensed public or private institution ... licensed under Chapter 577, Health and Safety Code." Id. § 74.001(a)(16). Chapter 577 governs private mental hospitals and other mental-health facilities. Further, courts have recognized that Chapter 74's list of healthcare providers is not exclusive. See Christus Health v. Beal, 240 S.W.3d 282, 286–87 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (holding that a drug and alcohol treatment center was a healthcare provider even though not expressly listed in statutory definition). Thus, Cypress Creek falls within the statutory definition of a healthcare provider under Chapter 74. See id. § 74.001(a)(12)(A).

treatment regarding inpatient mental health services." The complaint further contains allegations that Cypress Creek, through specific acts and omissions, failed to provide Cox the "operative standard of care." According to Hickman, this alleged failure to provide the operative standard of care proximately caused Cox's injuries, subsequent cardiac arrest, and death.

Among the acts and omissions specifically alleged, Hickman contends that Cypress Creek breached the standard of care by failing to:

- Provide Cox a mental health treatment plan commensurate with the patient's unique and individualized needs;
- Provide Cox mental health treatment in the least restrictive environment consistent with the patient's need for protection;
- Provide Cox sufficient inpatient mental health facility staff supervision;
- Assure Cox's mental health records reflected the actual times that prescribed medications were received;
- Assure Cox treatment in a safe environment by failing to respond to Cox's needs commensurate with her mental health condition; assure Cox was treated in a safe environment by failing to have a crash cart available and functional when needed in an emergency; and
- Provide Cox inpatient mental health nursing treatments commensurate with her needs and the required statutory and regulatory standards.

Additionally, Hickman alleges that Cypress Creek further breached the operative standard of care by failing to:

- Assure Cox received her prescribed medications in a timely manner;
- Assure Cox was not provided excessive medications;
- Assure Cox was not provided unnecessary medications;
- Assure that treatment and prescriptions were documented correctly, and
- Assure Cox was not a victim of polypharmacy.

Hickman also contends Cypress Creek failed to assure Cox received "appropriate care" after she exhibited post-ECT symptoms of swelling in her hand and a continuous twitch in her eye. And, Hickman alleges the nursing staff was "negligent per se" pursuant to the Texas Nursing Practice Act.

Looking to the underlying nature or essence of these claims, Hickman's factual allegations and alleged acts and omissions necessarily implicate applicable standards of care because Hickman's complaints are directed to Cox's treatment or lack of treatment and claimed departures from accepted standards of health care, or safety or professional or administrative services directly related to health care allegedly proximately resulting in the damages of which she now complains. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(a)(13). These allegations concerning Cox's mental-health treatment are an inseparable part of the rendition of the medical or health care services Cypress Creek provided to Cox. *See Diversicare*, 185 S.W.3d at 847–48; *Walden v. Jeffery*, 907 S.W.2d 446, 448 (Tex.1995) (per curiam); *Smalling*, 203 S.W.3d at 362–63. And, as Hickman appears to concede,[3] expert testimony will be necessary to prove Cypress Creek's alleged lapses in professional judgment and

---

**3.** In her appellate brief, Hickman states that she "recognizes that at some point she will likely require an expert to determine whether or not" Cypress Creek violated Cox's patient rights. But she insists that no expert report is required because her claims are not health-care-liability claims.

treatment. *See Diversicare*, 185 S.W.3d at 851.

■ Hickman contends, however, that her chapter 321 claims sound in constitutional law and not "in contract or tort" as contemplated in the chapter 74's definition of a healthcare-liability claim. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 698–702 (Tex.2003) (noting that section 321.003 of the Health and Safety Code permits a person harmed by a mental-health facility's violation of the patient's bill of rights to sue for damages and other relief, but holding that statute did not waive sovereign immunity); *see also O'Connor v. Donaldson*, 422 U.S. 563, 576, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (holding state cannot constitutionally confine a nondangerous individual who is capable of surviving safely in freedom); *Wyatt v. Aderholt*, 503 F.2d 1305, 1314–15 (5th Cir. 1974) (holding civilly committed mental patients have a constitutional right to treatment). Hickman also points to Article I, sections 15 and 15–a of the Texas Constitution, which include provisions for the mentally ill relating to the right to trial by jury. *See* Tex. Const. art. I, §§ 15, 15–a. Hickman argues there are no similar constitutional protections for persons receiving general health care, and these constitutional underpinnings control over the substantive or procedural requirements of chapter 74. Additionally, Hickman argues that a claim brought under chapter 321 for a patient's-bill-of-rights violations differs from a medical malpractice claim in numerous respects, and argues that these differences evidence a legislative intent to provide a wholly separate statutory scheme that trumps chapter 74.

■ Although she posits a variety of arguments to support her position, Hickman may not use artful pleading to avoid chapter 74's requirements when the essence of the suit is a healthcare-liability claim. *See Garland Comty. Hosp.*, 156 S.W.3d at 543; *Smalling*, 203 S.W.3d at 363. Further, Hickman may not avoid the requirements of chapter 74 by carrying forward factual allegations that in essence assert healthcare-liability claims, while deleting reference to Chapter 74 and changing the labels for the claims. *See Med. Hosp. of Buna Tex., Inc. v. Wheatley*, 287 S.W.3d 286, 291–92 (Tex.App.-Beaumont 2009, pet. denied); *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 36–37 (Tex. App.-El Paso 2006, no pet.). Hickman's appellate arguments that her claims do not sound in contract or tort conflict with her live pleading, in which she asserts that Cypress Creek's alleged violations of the Mental Health Code, the Health and Safety Code, and the Nursing Practice Act constitute "negligence" or "negligence per se." Further, in asserting a private cause of action under section 321.003 of the Health and Safety Code, Hickman's allegations reflect that the essence of her complaints is that Cypress Creek breached duties it allegedly owed to Cox as a mental health care provider:

> Defendant, Cypress Creek Hospital, owed Jamye R. Cox, *the duty to provide proper inpatient mental health care* commensurate with the licensing laws and rules promulgated thereunder, and relative to her mental health condition, and *in the exercise of that duty the Defendant Cypress Creek was required to provide such reasonable care* as Cox['s] condition which was known, or should have been known, and required, as stated in such state licensing laws and rules promulgated thereunder ... includ[ing] *the duty to guard against the foreseeable consequences of the patient's injury, condition, or treatment* that brought her to the facility in the first instance. (emphasis added).

Thus, even though Hickman's claims relate to mental-health treatment rather than general medical health care, the above-italicized language, as well as the other allegations in the amended petition discussed above, fall within chapter 74's definition of "health care" as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to or on behalf of a patient during the patient's medical care, treatment, or confinement." *Id.* § 74.001(10).

Our conclusion that chapter 74 encompasses mental-health claims is supported by case law and by chapter 74. In *Diversicare,* a nursing home was sued for allegedly failing to provide adequate supervision and nursing services that proximately caused a resident's sexual assault by another resident. *See Diversicare,* 185 S.W.3d at 845. In concluding that the resident's claims were healthcare-liability claims governed by chapter 74, the supreme court noted that "[t]he level and types of health care services provided vary with the needs and capabilities, *both physical and mental,* of the patients." *Id.* at 850 (emphasis added). The supreme court further recognized that "[t]he nature and intensity of care and treatment, including professional supervision, monitoring, *assessment, quantities and types of medication,* and other medical treatment are judgments made by professionals trained and experienced in treating and caring for patients and the patient populations in their health care facilities." *Id.* (emphasis added); *see also See Fudge v. Wall,* 308 S.W.3d 458, 461–62 (Tex.App.-Dallas 2010, no pet.) ("Nothing in section 74.001 distinguishes between mental and physical health care."); *Mike Norgaard, LPC v. Pingel,* 296 S.W.3d 284, 288 (Tex.App.-

Fort Worth 2009, no pet.) ("Health care includes the care of mental conditions.").

As discussed above, Hickman's complaints are directed to Cox's treatment or lack of treatment and claimed departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to the mental-health care Cox received while at Cypress Creek. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.001(13). Other courts have reached similar conclusions when confronted with claims against mental-health facilities or treatment. *See Broxterman v. Carson,* 309 S.W.3d 154, 156, 158 (Tex.App.-Dallas 2010, pet. denied) (holding claims against hospital and others relating to patient's adverse reaction to prescription medication given against her will after she cut her wrist, including alleged violations of civil rights, Texas statutes, and other acts were healthcare-liability claims requiring expert report); *Groomes v. USH of Timberlawn, Inc.,* 170 S.W.3d 802, 806–07 (Tex.App.-Dallas 2005, no pet.) (holding claims against mental hospital for false imprisonment, intentional infliction of emotional distress, and abuse of process when mental-health facility refused to discharge fourteen-year-old patient at mother's request were healthcare-liability claims); *Parker v. CCS/Meadow Pines, Inc.,* 166 S.W.3d 509, 512–13 (Tex.App.-Texarkana 2005, no pet.) (holding claims against private mental hospital for injuries related to restraints used on patient, including claims that hospital violated patient's rights as set out in the Patient's Bill of Rights, were healthcare-liability claims). Therefore, Hickman's claims are healthcare-liability claims subject to the statutory requirements of chapter 74.[4]

---

4. Our holding is based on the specific allegations in Hickman's pleadings, and therefore

our opinion should not be interpreted as holding that all claims related to inpatient mental

### ·C

■ Generally, if the plaintiff fails to timely serve an expert report within the statutory deadline the trial court must dismiss the lawsuit with prejudice. *See* Tex. Civ. Prac. & Rem.Code § 74.351(b). But if the plaintiff has timely served a report on the defendant, the trial court cannot dismiss the lawsuit unless the report does not represent an objective good-faith effort to comply with the statutory requirements for such a report. *See id.* § 74.351(*l*). If an expert report has not been timely served because "elements of the report are found deficient," the court may grant one thirty-day extension to the plaintiff to cure the deficiency. *Id.* § 74.351(c).

Cypress Creek contends that the documents Hickman provided do not represent a good-faith effort to comply with chapter 74's expert-report requirement. Specifically, Cypress Creek contends that Grossman's report is inadequate because, among other things, she is not a physician and is not qualified to opine on causation. *See Kelly,* 255 S.W.3d at 675. And, the autopsy report does not equate to the provision of the statutorily mandated expert report because it does not include a fair summary of an expert's opinions regarding the applicable standard of care, the manner in which the care provided failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6); *Maxwell v. Seifert,* 237 S.W.3d 423, 427 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (medical records do not constitute an expert report under section 74.351). Further, Cypress Creek argues that because Hickman has made no further effort to comply, but has instead attempted to avoid

the expert-report requirement, her claims should be dismissed without the possibility of a thirty-day extension.

In response, Hickman does not ask that, if we determine she was required to comply with chapter 74's expert-report requirements, her claims be remanded to allow the trial court to consider whether to grant an extension. Instead, she maintains, as she did below, that she is simply not required to provide any expert reports because chapter 74 does not apply to her claims. We have concluded to the contrary, however, and in this circumstance, agree with Cypress Creek that dismissal is warranted. *See Hopkins County Hosp. Dist. v. Ray,* No. 06–08–00129–CV, 2009 WL 454338 (Tex.App.-Texarkana Feb. 24, 2009, no pet.) (mem. op.) (dismissal was warranted when plaintiff served report written by nurse and then took position that no expert report was required on causation).

\* \* \*

Accordingly, we reverse the trial court's order denying Cypress Creek's motion to dismiss and remand the cause to the trial court for entry of a judgment dismissing Hickman's claims with prejudice for failing to furnish an expert report as required by section 74.351 of the Civil Practice and Remedies Code. In accordance with section 74.351(b)(1) of the Civil Practice and Remedies Code, the trial court shall award reasonable attorney's fees and costs of court incurred by Cypress Creek.

health facilities are necessarily healthcare-liability claims. Nor is it necessary in this case to consider, and we do not consider, whether

a healthcare-liability claim and a claim under chapter 321 are mutually exclusive.