**Affirmed in part and reversed in part and Opinion filed August 28, 2012.**



In The

# Fourteenth Court of Appeals

---

NO. 14-11-00880-CV
NO. 14-11-00890-CV

---

**MEMORIAL HERMANN HOSPITAL SYSTEM D/B/A MEMORIAL HERMANN MEMORIAL CITY HOSPITAL, Appellant/Cross-Appellee,**

**V.**

**SPENCE KERRIGAN, INDIVIDUALLY AND AS ATTORNEY IN FACT FOR KATHLEEN KERRIGAN, Appellee/Cross-Appellant.**

**On Appeal from the 127th District Court
Harris County
Trial Court Cause No. 2011-15999**

## OPINION

This is a case concerning the scope of a statutorily-defined term: "Health care liability claim." *See* Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). The trial court concluded that parts of the case were health-care-liability claims and other parts were not, and it dismissed those claims it determined were health-care-liability claims because

Spence Kerrigan failed to timely produce any expert reports. *See id.* § 74.351(b). Both parties have appealed. We affirm in part, reverse in part, and remand.

I

Most of the relevant facts are undisputed. At 4:29 p.m. on January 1, 2010, Kerrigan brought his daughter, Kathleen, to the emergency room at a hospital operated by appellant Memorial Hermann Hospital System d/b/a Memorial Hermann Memorial City Hospital. Kathleen had come to the emergency room to seek treatment of painful sores on her feet. An initial evaluation performed by the attending physician revealed that Kathleen had been diagnosed with bipolar disorder several years earlier but that she had recently stopped taking her medication. Before visiting the emergency room, Kathleen had spent several days relentlessly pacing throughout her home. The attending physician concluded that the pacing was a result of a manic episode and that the pacing had caused the sores on Kathleen's feet. Further, Kathleen's erratic behavior during the evaluation indicated to the attending physician that Kathleen was suffering from acute psychosis and mania. At 6:35 p.m., the attending physician requested guidance on Kathleen's mental status from a member of the hospital's psych-response team.

After conducting his own examination of Kathleen, the psych-response doctor confirmed the attending physician's diagnosis. He noted that Kathleen was experiencing auditory and visual hallucinations and was a danger to herself and others. He recommended transferring Kathleen to an inpatient psychiatric facility for her own safety until her mental status stabilized. It is unclear whether Kathleen consented to such a transfer, but the attending physician arranged for the recommended transfer to occur sometime in the morning on January 2. Kathleen was to stay at the hospital until the transfer was made.

During the night, Kathleen became increasingly restless and agitated. She left her room and expressed a desire to leave the hospital. To preserve the attending physician's medical-care plan and to ensure the safety of hospital staff and other patients, the treating

2

physicians requested help from hospital security personnel. A security officer quickly intervened, but what happened next is the subject of some dispute. Kerrigan, who was not actually present at the time, claims the security officer "unnecessarily and abusively knocked [Kathleen] to the ground." He describes the incident as "barbaric" and "a brutal, physical assault" that "exceed[ed] the force required for the circumstance." Memorial Hermann tells a different story: "When a security officer arrived to guide [Kathleen] back to her room for her safety, she became irate and attempted to strike him. In the process of attempting to strike the security officer, [Kathleen] fell on the ground and began shouting racial epithets at the security officer." Kathleen was transferred to an inpatient psychiatric facility as planned at 8:19 a.m. on January 2.

Individually, and as attorney in fact for his daughter, Kerrigan filed suit against Memorial Hermann, alleging claims for false imprisonment, assault, and negligence. Under section 74.351 of the Texas Civil Practices and Remedies Code, Memorial Hermann moved to dismiss all claims for Kerrigan's failure to provide an expert report. The trial court granted the motion as to the negligence claim but denied it as to the false-imprisonment and assault claims. Memorial Hermann appealed the trial court's failure to dismiss the intentional-tort claims, and Kerrigan cross-appealed, asserting that the trial court erred in dismissing the negligence claim.

II

Despite two cause numbers and five briefs, this case has only one issue: We must decide which—if any—of Kerrigan's claims are health-care-liability claims. The legislature has defined a "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

3

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). "Health care" is broadly defined as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Tex. Civ. Prac. & Rem. Code § 74.001(a)(10). A cause of action alleges a departure from accepted standards of medical care or health care if the act or omission complained of is an inseparable part of the rendition of medical or health care services. *Diversicare Gen. Partner, Inc., v. Rubio*, 185 S.W.3d 842, 848 (Tex. 2005); *Tex. Cypress Creek Hosp., L.P. v. Hickman*, 329 S.W.3d 209, 214 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

Determining whether Kerrigan's claims fit within the statutory definition is a question of statutory construction, and we review it de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *Phi Van Cao v. Hardy*, 352 S.W.3d 218, 220 (Tex. App.—Houston [14th Dist.] 2011, no pet.). In making that determination, we examine the underlying nature of the claim and are not bound by the form of the pleading. *Diversicare*, 185 S.W.3d at 847; *Hickman*, 329 S.W.3d at 214. We must focus on the essence of the claims and consider the alleged wrongful conduct and the duties allegedly breached, rather than the injuries allegedly suffered. *Diversicare*, 185 S.W.3d at 851; *Hickman*, 329 S.W.3d at 214. A health-care-liability claim may not be recast as another cause of action to avoid the requirements of chapter 74. *Hickman*, 329 S.W.3d at 214; *see Diversicare*, 185 S.W.3d at 851. Therefore, we are not bound by Kerrigan's characterization of his claims. *Hickman*, 329 S.W.3d at 214; *see Diversicare*, 185 S.W.3d at 851. *Hickman*, 329 S.W.3d at 214; *see Diversicare*, 185 S.W.3d at 851.

III

Kerrigan relies on this court's opinion in *Appell v. Muguerza*, in which we concluded that "[p]unching and violently throwing patients to the ground or into a cabinet without provocation cannot reasonably be characterized as being part of the medical services provided by a doctor." 329 S.W.3d 104, 112–13 (Tex. App.—Houston [14th

4

Dist.] 2010, pet. filed). However, the precedential value of *Appell* has recently been called into question. While the present appeal was pending, the supreme court issued *Texas West Oaks Hospital, LP v. Williams*, No. 10-0603, ___ S.W.3d ___, 2012 WL 2476807 (Tex. June 29, 2012). The *Williams* opinion clearly states that the broad terms of section 74.001 of the Texas Civil Practices and Remedies Code apply to claimed departures from the accepted standards of safety—even if that safety is not directly related to health care. *Id.* at *9–10.

In the present case, we believe *Williams* mandates a conclusion that all of Kerrigan's claims are health-care-liability claims subject to the expert-report requirements of section 74.351. Each of Kerrigan's three claims—false imprisonment, assault, and negligence—centers on actions taken by Memorial Hermann's employees to ensure the safety of Kathleen, other patients, and other Memorial Hermann employees. All of these actions were taken after Kathleen was medically determined to be a danger to herself and others, and all were taken to preserve the attending physician's medical-care plan for Kathleen. Kerrigan strenuously argues that the actions taken by Memorial Hermann's employees were not directly related to Kathleen's health care. Though we find Kerrigan's argument unpersuasive,[1] under *Williams*, we need not decide the issue.[2] *See id.* at *11.

We conclude that all of Kerrigan's claims are health-care-liability claims subject to the expert-report requirements of section 74.351. As a result, the trial court properly

---

[1] The decision to transfer Kathleen to a psychiatric facility—and to hold her at the hospital pending her transfer—implicates her diagnosis, care, or treatment. *See Smalling v. Gardner*, 203 S.W.3d 354, 365 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Likewise, any treatment or lack of treatment Kathleen received while she remained at Memorial Hermann Memorial City Hospital implicates the standard of care because any decision regarding the appropriateness or inappropriateness of the treatment requires one to consider the duties owed to a patient and what an ordinarily prudent physician or health-care provider would do under those circumstances. *See id.*

[2] The supreme court has recently granted review on a similar case out of this court to decide whether an expert report is required when a patient sues a doctor alleging sexual assault during an medical examination. *See Wasserman v. Gugel*, No. 14-09-00450-CV, 2010 WL 1992622 (Tex. App.—Houston [14th Dist.] May 20, 2010, pet. granted). Our disposition of Kerrigan's claims in the present case should not be construed as expressing any view on the issue to be decided in *Wasserman*.

dismissed the negligence claim for failure to provide an expert report. It erred, however, in failing to dismiss Kerrigan's false-imprisonment and assault claims for the same reason.

* * *

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

/s/ Jeffrey V. Brown
   Justice

Panel consists of Chief Justice Hedges and Justices Boyce and Brown.