**Reversed, Rendered in Part, and Remanded in Part, and Majority and Dissenting Opinions filed March 26, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00887-CV

---

## THE UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, Appellant

### V.

### BRENDA JACKSON, Appellee

---

**On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Cause No. 17-CV-1226**

---

## M A J O R I T Y   O P I N I O N

The University of Texas Medical Branch at Galveston ("UTMB") appeals an order denying its motion to dismiss under the Texas Medical Liability Act. Appellee Brenda Jackson sued UTMB for injuries she sustained from a slip and fall while a patient there. Contending Jackson's claims are health care liability claims under Texas Civil Practice and Remedies Code chapter 74, UTMB filed a

motion to dismiss because Jackson failed to serve an expert report as the code requires. The trial court denied UTMB's motion.

We conclude that Jackson's claims are subject to chapter 74's expert report requirement. Because Jackson failed to serve an expert report in support of her claims, we reverse and render judgment that she take nothing against UTMB, and we remand for further proceedings consistent with this opinion.

## Background

UTMB admitted Jackson for a colonoscopy. According to Jackson, while "walking from the prep room to the procedure area," she "slipped on a liquid believed to be water." The liquid was in an area not open to the general public. Jackson suffered injuries as a result of her fall. Jackson sued UTMB, asserting a premises liability claim for negligence.

UTMB answered and generally denied Jackson's allegations. After the expiration of 120 days, UTMB filed a motion to dismiss and for attorney's fees, contending that Jackson's claim was a health care liability claim governed by Civil Practice and Remedies Code chapter 74, which requires, among other things, a plaintiff to serve an expert report on a defendant health care provider not later than 120 days after the defendant files its answer. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a). Because Jackson did not serve an expert report, UTMB argued that the trial court must dismiss Jackson's claim with prejudice and award reasonable attorney's fees and costs incurred. *See id.* § 74.351(b)(2).

After conducting a hearing, the trial court denied UTMB's motion to dismiss. UTMB appeals and argues the trial court erred in denying its motion.[1]

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(9) ("A person may appeal from an interlocutory order . . . [that] denies all or part of the relief sought by a motion under Section 74.351(b).").

**Analysis**

**A.     The Nature of Chapter 74 Health Care Liability Claims**

The main issue in this appeal—whether Jackson's claim is a health care liability claim—turns on the reach of the Texas Medical Liability Act ("TMLA"), a comprehensive medical malpractice reform measure. *See Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 287 (Tex. 2010) ("[The TMLA] was enacted in 2003 as part of House Bill 4, a top-to-bottom overhaul of Texas malpractice law."); *see also Hopebridge Hosp. Houston, L.L.C. v. Lerma*, 521 S.W.3d 830, 834 (Tex. App.—Houston [14th Dist.] 2017, no pet.).   The TMLA is codified at chapter 74 of the Texas Civil Practice and Remedies Code. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 864-82 (codified at Tex. Civ. Prac. & Rem. Code ch. 74).   Because this case requires us to interpret the statute to determine whether it extends to Jackson's claim, our review is de novo. *Loaisiga v. Cerda*, 379 S.W.3d 248, 254-55 (Tex. 2012); *Mem'l Hermann Hosp. Sys. v. Kerrigan*, 383 S.W.3d 611, 612, 613 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Section 74.351 requires a plaintiff, in cases involving a health care liability claim, to serve on the defendant one or more expert reports, on or before the 120th day after the defendant's original answer is filed.  Tex. Civ. Prac. & Rem. Code § 74.351(a).  An expert report means "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.*

§ 74.351(r)(6).[2]  If the plaintiff fails to serve an expert report within the 120-day period, the statute requires a trial court, upon motion, to dismiss the plaintiff's claim with prejudice.  *Id.* § 74.351(b)(2).

Section 74.351's expert report requirement applies only to a health care liability claim.  The TMLA defines a "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13).   From this definition, the Supreme Court of Texas has identified three basic elements of a health care liability claim:

> (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.

*Psychiatric Sols., Inc. v. Palit*, 414 S.W.3d 724, 725-26 (Tex. 2013) (citation omitted).  For purposes of UTMB's motion and this appeal, the parties do not dispute that UTMB is a health care provider or that the acts or omissions alleged against UTMB proximately caused Jackson's injuries.

---

[2] The expert report requirement is meant to identify frivolous claims and reduce the expense and time necessary to dispose of any that are filed.  *See Loaisiga*, 379 S.W.3d at 258.  It is a threshold requirement; it is not meant to force the plaintiff to marshal and present all of the plaintiff's proof.  *See In re Alere Women's & Children's Health, LLC*, 357 S.W.3d 809, 812-13 (Tex. App.—Houston [14th Dist.] 2011, orig. proceeding); *see also* Tex. Civ. Prac. & Rem. Code § 74.351(k), (t) (expert report generally not admissible in evidence; cannot be used in a deposition, trial, or other proceeding; and shall not be referred to by any party during the course of the action for any purpose, unless the report is used by the claimant in the course of the action for any purpose other than to meet the service requirement of section 74.351(a)).

The only dispute, then, pertains to the second element of a health care liability claim—whether Jackson's claim at issue "concern[s] treatment, lack of treatment, or a departure from the accepted standards of medical care, or health care, or safety." *Id.* In its motion to dismiss, UTMB argued that "the alleged negligence—allowing a slippery substance to remain on the floor—is directly related to the task of inspecting and keeping the floor safe and clean for patients," and so Jackson's claim necessarily invoked accepted safety standards by which the hospital must abide when providing health care to patients. Jackson responded that her claim does not allege a breach of safety standards that are specific to a hospital rather than any general premises owner, and therefore her claim does not implicate UTMB's duties as a health care provider.

**B.    Jackson's Claim is a Health Care Liability Claim**

Analysis of the second element of a health care liability claim focuses on the facts underlying the claim. *Loaisiga*, 379 S.W.3d at 255. A plaintiff cannot avoid the TMLA's requirements by "artfully-phrased language" or recasting of claims. *Id.*; *see also Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 854 (Tex. 2005); *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004). Therefore, in ascertaining the gravamen of the claim asserted, we are not bound by Jackson's characterization of her claim. *See Buck v. Blum*, 130 S.W.3d 285, 291 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Rather, we look to the "entire court record" as a whole and the overall context of the plaintiff's suit, including the nature of the factual allegations in the pleadings, the motion to dismiss, the response, and any relevant evidence properly admitted. *See Loaisiga*, 379 S.W.3d at 258-59.

Accordingly, a claim can be a health care liability claim regardless whether the plaintiff's petition explicitly cites the TMLA or alleges a breach of any

5

accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care. *Id.* at 255. If a claim is premised on facts that could support liability for a breach of any such duties, then the claim is properly characterized as a health care liability claim and chapter 74 applies. *See id.*

With this framework in mind, we turn to the central question whether Jackson's claim concerns treatment, lack of treatment, or a departure from the accepted standards of medical care, or health care, or safety. As the Supreme Court of Texas has observed, the TMLA's broad language evidences legislative intent for the statute to have expansive application. *See Loaisiga*, 379 S.W.3d at 256 (citing, e.g., Tex. Civ. Prac. & Rem. Code § 74.001(a)(10)). In this regard, the code casts a wide net, "essentially creat[ing] a presumption that a claim is [a health care liability claim] if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." *Id.*

But the presumption is necessarily rebuttable. For instance, a claim may not fall under chapter 74 if "the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare [is] the healthcare setting (*i.e.*, the physical location of the conduct in a health care facility)." *Id.* On the other hand, "although the mere location of an injury in a health care facility or in a health care setting does not bring a claim based on that injury within the TMLA . . . the fact that the incident *could have occurred* outside such a facility or setting does not preclude the claim from being [a health care liability claim]." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504-05 (Tex. 2015) (emphasis added). The "pivotal issue . . . is whether the standards on

6

which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.* at 505.

Admittedly, the line between a safety-standards-based claim that is a health care liability claim and one that is not "may not always be clear," *id.* at 505, but the Supreme Court of Texas has provided helpful guidance. In *Ross*, the court held that a safety-standards-based claim such as Jackson's is not a health care liability claim unless there is a substantive nexus between the safety standards allegedly violated and the provision of health care. *See id.* at 504-05. To assist courts in analyzing whether a claim is substantively related to a defendant health care provider's provision of medical or health care, the supreme court identified seven non-exclusive considerations:

> 1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;
>
> 2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;
>
> 3. At the time of the injury was the claimant in the process of seeking or receiving health care;
>
> 4. At the time of the injury was the claimant providing or assisting in providing health care;
>
> 5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;
>
> 6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or
>
> 7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.* at 505.

Considering the record in light of the relevant *Ross* factors, we conclude that a substantive nexus exists between the accepted safety standards at issue and Jackson's fall.[3]   Here, Jackson was a patient seeking special medical care (a colonoscopy).   As Jackson admitted, she had "been prepared"—i.e., UTMB had commenced providing medical care—and was walking to the procedure room to undergo the colonoscopy when she slipped and fell.   If the merits were reached, it may be relevant to inform the trier of fact of hospital procedures on safely transferring a patient during the course or provision of medical treatment.   *Accord St. David's Healthcare P'ship, L.P. v. Esparza*, 348 S.W.3d 904, 906 (Tex. 2011) (per curiam) (allegation that patient slipped on ultrasound gel was health care liability claim because fact finder would need to be informed of hospital procedures on safely disposing of gloves covered with a slippery substance after a medical procedure).   Moreover, the water on which she slipped was in an area not open to the general public.   UTMB, therefore, was responsible for Jackson's safety as a patient, at a minimum.   *See Se. Tex. Cardiology Assocs. v. Smith*, ---S.W.3d---, 2019 WL 3022547, at *3 (Tex. App.—Beaumont 2019, no pet.); *see also Little v. Riverside Gen. Hosp. Inc.*, No. 14-14-00797-CV, 2016 WL 208142, at *3 (Tex. App.—Houston [14th Dist.] Jan. 14, 2016, no pet.) (mem. op.) ("Protection of patient safety—including maintenance of hospital grounds to prevent injury—is part and parcel of the provision of health care."); *cf. Houston Methodist Willowbrook Hosp. v. Ramirez*, 539 S.W.3d 495, 501 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (holding that defendant hospital did not demonstrate that

---

[3] We need not address each factor individually, as some are clearly inapplicable to the facts at hand.   For instance, Jackson was not "providing or assisting in providing health care," nor was an "instrumentality [] involved in the defendant's alleged negligence."   *See, e.g.*, *Little v. Riverside Gen. Hosp. Inc.*, No. 14-14-00797-CV, 2016 WL 208142, at *3 (Tex. App.—Houston [14th Dist.] Jan. 14, 2016, no pet.) (mem. op.) (discussing *Ross*'s applicability generally, rather than factor-by-factor).

asserted claims implicated duties specific to health care providers, as opposed to duties owed by any premises owner, because the fall occurred in a publicly accessible hallway within the hospital). Finally, as UTMB observes, federal regulations require the hospital to meet certain safety standards, including requirements that the "overall hospital environment . . . be developed and maintained in such a manner that the safety and well-being of patients are assured," that diagnostic facilities "be located for the safety of patients," and that hospital facilities "be maintained to ensure an acceptable level of safety and quality." 42 C.F.R. § 482.41 (a), (d)(1), (d)(2). In sum, factors 2, 3, 5, and 7 suggest Jackson's claim is a health care liability claim; factor 1 is unclear because the record does not show how the spill was created, but the spill undisputedly existed in an area generally restricted to medical personnel and patients; the answer to factor 4 is no; and factor 6 does not apply.

Jackson's assertion that UTMB failed to make its premises safe for its patients is an allegation that it did not comport with the required standard of patient care, which includes protecting patients from injury on hospital premises within the context of the treatment provided. *See Ross*, 462 S.W.3d at 502; *see also Little*, 2016 WL 208142, at *3. We therefore hold that Jackson's claim is a health care liability claim, as that term is defined under chapter 74, and Jackson was required to serve on UTMB an expert report within 120 days of UTMB's answer. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a). Because Jackson failed to so, the trial court erred in denying UTMB's motion to dismiss. *See id.* § 74.351(b).

We sustain UTMB's issue.

## Conclusion

We hold that Jackson's claim is based on an alleged departure from accepted standards of patient safety and is a health care liability claim under chapter 74.

9

Therefore, Jackson was required to comply with section 74.351(a)'s expert report requirements. Because she failed to serve an expert report, the trial court erred in denying UTMB's motion to dismiss. We sustain UTMB's issue, reverse the trial court's order, render judgment that Jackson take nothing from UTMB, and remand the case with instructions for the trial court to enter judgment consistent with this opinion, including an award of taxable court costs to UTMB.[4]

/s/     Kevin Jewell
           Justice

Panel consists of Justices Wise, Jewell, and Poissant. (Poissant, J., dissenting).

---

[4] UTMB does not request a remand for determination of attorneys' fees. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b)(1); *Lentino v. Cullen Ctr. Bank & Trust*, No. 14-00-00692-CV, 2002 WL 220421, at *11 (Tex. App.—Houston [14th Dist.] Feb. 14, 2002, pet. denied) (not designated for publication) ("We cannot grant relief appellants do not request."); *see also State v. Anderson Courier Serv.*, 222 S.W.3d 62, 66-67 (Tex. App.—Austin 2005, pet. denied) ("In fact, Anderson Courier sought attorney's fees in its declaratory judgment action under section 37.009 in the trial court but did not pursue the issue on appeal. Because the issue was not raised on appeal, there was no reason for this Court to remand the case for further consideration.").