**Reversed and Remand and Memorandum Opinion filed July 10, 2012.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-11-00444-CV

**TOMMY HENRY, Appellant,**

**V.**

**DR. CHAD KELLY, Appellee.**

**On Appeal from the 127th District Court**
**Harris County**
**Trial Court Cause No. 2010-05341**

## OPINION

This is an appeal from the trial court's dismissal based on appellant Tommy Henry's failure to file an expert report regarding causation as to appellee Chad Kelly, D.C.[1] We reverse and remand.

---

[1] D.C. signifies a Doctor of Chiropractic.

Complaining of back pain that radiated to his right knee, Henry was examined by Terry Moore, D.C., at Baytown Back Pain and Health Center on May 2, 2008.[2] After an examination, Dr. Moore recommended an MRI, but did not perform one. Instead, he manipulated Henry's spine without an MRI. Several days later, Henry saw his family doctor and complained of worsening lumbar pain and tingling and numbness in his right leg. Henry completed several follow-up visits with his family doctor, but his symptoms did not improve. He returned to Baytown Back Pain and Health Center on May 21, but Dr. Moore was not there that day. In Moore's absence, Henry received a spinal manipulation by Dr. Kelly. Henry was unable to sleep that night because of intense pain, and he called Dr. Moore the following morning. An MRI performed on May 22 showed two herniated discs.

Henry sued Dr. Moore, Dr. Kelly, and Baytown Back Pain and Health Center, alleging that his initial symptoms should have been interpreted as symptoms of a herniated disc and that an immediate MRI should have been performed. Henry alleges that an early MRI would have allowed for a more rapid diagnosis and prevented aggravation of the condition caused by chiropractic treatment. Along with his original petition, Henry filed two expert reports, one by Daniel V. Tintor, D.C., and the other by Gary C. Dennis, M.D. Dr. Tintor's report provides, in relevant part:

> I am a graduate of the Palmer College of Chiropractic-West and I obtained my Doctor of Chiropractic in 1985. I have practiced chiropractic continuously in my office in Redwood City, California since January 1986. I am a certified Industrial Injury Examiner, a certified Disability Examiner and practiced as a California Qualified Medical Evaluator from 1990 to 2008. I am a member of the San Mateo County chapter of the California Chiropractic Association.

---

[2] Neither brief provides a complete timeline. This is the order of events set out in Henry's original petition.

As a practicing chiropractor in the community of Redwood City and San Mateo County, I am very familiar with the standards of professional practice of chiropractic in regards to diagnosis and chiropractic technique.

I am qualified to render an expert opinion on these matters by virtue of my education, training, knowledge, and more than 20 years experience.

. . .

According to Mr. Henry, on April 29, 2008 he initially felt a catch in the lower back. The catch lasted a short time and decreased later that day without any treatment. Mr. Henry was able to golf the next day. A residual low back soreness persisted and he made an appointment to see Terry Moore, DC, a chiropractor he had seen in the past. On May 2, 2008 Dr. Moore was out of the office and Dr. Kelly examined and treated Mr. Henry at 1:15PM.

Dr. Kelly performed a manipulation which is not within the standard scope of chiropractic technique. Mr. Henry was asked to lie on his back. Dr. Kelly lifted one leg then, with a ballistic trust [sic], flexed the leg toward the opposite shoulder. Lumbar audible cavitations were heard. Dr. Kelly then performed the same technique on the other side. Again audible cavitations were heard.

Mr. Henry left the office and went home. Approximately 90 minutes later he felt sharp shooting lower back pain. Over the next few hours these symptoms decreased. Sometime during the night he awoke with the sensation of "fire" in the lower back and right leg. He continued to experience disabling levels of back pain and right sciatica over the next 3 weeks.

On May 22, 2008 he returned to Dr. Moore's clinic. Following an exam with Dr. Moore he was immediately referred out for a lumbar MRI. Once Dr. Moore reviewed the MRI he immediately referred Mr. Henry to David MacDougall, D.O. for surgical consultation. Mr. Henry underwent surgical decompression on June 2, 2008.

There is a question regarding the inconsistency between Dr. Kelly's records and the statements made by Mr. Henry. Dr. Kelly notes Mr. Henry's pain levels to be severe with leg pain greater than back pain. Mr. Henry states that he had minimal back soreness absent leg pain.

3

It is my opinion that Dr. Kelly breached the standard of care by not first fully evaluating Mr. Henry's injury. There is no documentation regarding the history of the initial complaint and a very limited exam. The standard of care recognizes the need to document the history and perform and record examination findings. Objective findings on May 2nd note "LE DTR is 2+/2+" but written on the bottom of the page a notation of decreased reflex is made, "Diminished Achilles Reflex R side."

CAUSATION: In regards to causation of the 2 disc herniation [sic], I believe that the unorthodox manipulative procedure caused or aggravated the 2 lumbar discs and resulted in their failure. The standard of care recognizes that long axis, non-specific ballistic type manipulative maneuvers can place the patient at risk of disc herniation. According to Mr. Henry, prior to the chiropractic adjustment his only complaint was lower back stiffness. Following the adjustment he reported the onset of marked back and right leg pain. It is within medical probability that the long axis, ballistic type adjustment to Mr. Henry's back displaced the 2 lumbar discs.

In contrast, Dr. Dennis's report does not mention Dr. Kelly and provides a conflicting version of the facts:

Tommy Henry was evaluated for back pain, which radiated to his right knee on May 2, 2008 by Dr. Terry Moore.[3] Dr. Moore found on examination a diminished right Achilles reflex and positive straight leg raising in the right leg, indicative of radiculopathy. An MRI was recommended, however an MRI was not done, rather the patient had a manipulation of the spine by Dr. Moore. On subsequent visits to Dr. Hossein Yazdani the patient was found to have pain and tingling in the right leg. Mr. Henry received treatment at the Baytown Back Pain and Health Center on May 21, 2008. On the next day May 22, 2008 Dr. Moore noted that Mr. Henry could not sleep and was in severe pain. An MRI was performed demonstrating a herniated disc at L3-L4 with right L3 nerve root compression at L3-L4 and LS-SI herniated disc with SI root compression greatest on the right.

Dr. Kelly timely objected to Henry's expert reports and asserted that (1) Dr. Tintor, as a doctor of chiropractic, was not qualified to opine as to causation; (2) Dr. Dennis, though qualified to opine as to causation, did not implicate Dr. Kelly; and (3) Dr. Dennis did not

---

[3] In his original petition, Henry also asserts that it was Dr. Moore—not Dr. Kelly—who treated him on May 2, 2008.

4

opine on the relevant standard of care. Dr. Kelly also moved to dismiss. While that motion was pending, Henry nonsuited Dr. Moore and Baytown Back Pain and Health Center.

The trial court overruled Dr. Kelly's objections related to Dr. Dennis and ultimately ruled that Dr. Tintor's report is no report at all. In arguing against Dr. Kelly's motion to dismiss, Henry asserted that "The report of Dr. Dennis is sufficient to advise Dr. Kelly that it was the chiropractic treatment of May 2, 2008 . . . that aggravated the previously existing condition that existed in Mr. Henry." Henry also requested a 30-day extension under section 74.351(c) of the Texas Civil Practice and Remedies Code to cure any deficiencies in his expert reports.

The trial court found the Dennis report to be no report at all with regard to Dr. Kelly. Having found that no report concerning Dr. Kelly had been filed, the trial court concluded it did not have the discretion to consider Henry's request for a 30-day extension. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b); *Univ. of Tex. Med. Branch v. Railsback*, 259 S.W.3d 860, 865 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Accordingly, the trial court denied Henry's motion to reconsider, and this appeal followed.

II

A

A medical-malpractice plaintiff must timely serve on each defendant or each defendant's attorney one or more reports by an expert that provide a fair summary of the expert's opinions regarding (1) the applicable standards of care, (2) the manner in which the defendant's care failed to satisfy these standards, and (3) the causal relationship between the defendant's failure and the injury, harm, or damages claimed. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a), (r)(6). The plaintiff may satisfy the statutory requirements by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician

5

or health care provider. *Id.* § 74.351(i). However, only a physician may give opinion testimony about the causal relationship between the claimed injury, harm, or damages and the alleged departure from the applicable standard of care. *See id.* § 74.351(r)(5)(C); *Tex. Cypress Creek Hosp., L.P. v. Hickman*, 329 S.W.3d 209, 213 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

We review a trial court's decision on a motion to dismiss under section 74.351 for abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex. 2001); *Hickman*, 329 S.W.3d at 213. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Larson v. Downing,* 197 S.W.3d 303, 304–05 (Tex. 2006); *Hickman*, 329 S.W.3d at 213. Though we may not substitute our judgment for that of the trial court, the trial court has no discretion in determining what the law is or applying the law to the facts. *Kingwood Specialty Hosp., Ltd. v. Barley*, 328 S.W.3d 611, 614 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Likewise, we generally review a trial court's decision on the 30-day extension for an abuse of discretion. *See* Tex. Civ. Prac. & Rem. Code § 74.351(c). When an expert report is provided but is somehow deficient, a trial court may grant a 30-day extension to allow the deficiencies to be cured. *Id.* (providing that when an expert report is deficient, "the court may grant one 30-day extension"); *see Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003) (considering the historical antecedent of section 74.351). In contrast, when no report at all is provided, a trial court may not grant the 30-day extension. Tex. Civ. Prac. & Rem. Code § 74.351(b); *Badiga v. Lopez*, 274 S.W.3d 681, 684–85 (Tex. 2009).

The Supreme Court has encouraged trial courts to liberally construe expert reports in favor of plaintiffs: "[T]rial courts should err on the side of granting claimants' extensions to show the merits of their claims." *Samlowski v. Wooten*, 332 S.W.3d 404, 416 (Tex. 2011) (plurality op.) (Guzman, J. concurring), *quoted in* plurality opinion, 332 S.W.3d at 411. Recently, the Supreme Court has "brighten[ed] the line between deficient-report cases (where an extension is discretionary) and no-report cases (where dismissal is

mandatory)." *Scoresby v. Santillan*, 346 S.W.3d 546, 558 (Tex. 2011) (Willett, J., concurring). *Scoresby* sets an intentionally low threshold: "[A] thirty-day extension to cure deficiencies in an expert report may be granted if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Id.* at 557. Further, "[a]ll deficiencies, whether in the expert's opinions or qualifications, are subject to being cured before an appeal may be taken from the trial court's refusal to dismiss the case." *Id.*

B

Henry raises three issues on appeal: (1) though the trial court was correct in sustaining Dr. Kelly's objection to Dr. Tintor's report as to causation, it erred in finding Dr. Tintor generally unqualified as an expert; (2) the trial court erred in dismissing the case based on Dr. Dennis's report; and (3) the trial court erred by concluding it had no discretion to grant a 30-day extension.

Because we conclude Henry's third issue requires us to reverse and remand, it is the only issue we address. We must determine whether the trial court erred in finding it had no discretion to grant the 30-day extension. That is, we must decide whether Dr. Tintor's inability to serve as an expert witness on causation makes Dr. Tintor's report no report at all, as the trial court concluded. If so, then the trial court correctly determined that no extension is available under section 74.351(c). *See* Tex. Civ. Prac. & Rem. Code § 74.403(a); *Scoresby*, 346 S.W.3d at 557 (Tex. 2011); *see also Thomas v. Torrez*, 362 S.W.3d 669, 672–73 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd) (discussing the distinction between a deficient report and no report). If not, then the trial court erred in not considering whether to exercise its discretion to grant a 30-day extension under section 74.351(c). *See* Tex. Civ. Prac. & Rem. Code § 74.403(a); *Scoresby*, 346 S.W.3d at 557. An extension is available if Dr. Tintor's report contains the opinion of an individual with expertise that Henry's claim has merit and if the report implicates Dr. Kelly's conduct. *See Scoresby*, 346 S.W.3d at 557. The Supreme Court of Texas has recognized that the *Scoresby* standard is minimal; therefore, most purported expert

7

reports are likely to fall into the deficient-report category and thus be eligible for a 30-day extension under section 74.351(c). *See Scoresby*, 346 S.W.3d at 557–58. Dr. Tintor's report clearly implicates Dr. Kelly's conduct, so the remaining issue is whether the report contains the opinion of an individual with expertise that Henry's claim has merit.

The lack of qualification of the expert who provided a report makes the report defective but does not make the report no report at all. *See Scoresby*, 346 S.W.3d at 557 (concluding that even if expert was not qualified to provide expert testimony in the case under review, the report was still a defective report allowing the trial court an opportunity to grant an extension under section 74.351(c)); *Ogletree v. Matthews*, 262 S.W.3d 316, 319–21 (Tex. 2007) (holding that the report was still a defective report allowing the trial court an opportunity to grant an extension, even if expert was not qualified to provide expert testimony in the case under review); *Rosemond v. Al-Lahiq,* 362 S.W.3d 830, 840 (Tex. App.—Houston [14th Dist.] 2012, pet. filed) (same as *Scoresby*). In addition, the failure of the expert report to satisfy the requirements for an "expert report" as to causation does not render the report no report at all. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671 (Tex. 2008) (holding that report's failure to comply with Chapter 74 regarding the element of causation rendered the report defective rather than no report, so that plaintiff was still eligible for a thirty-day extension under section 74.351(c)); *Rosemond,* 362 S.W.3d at 840 (holding that report satisfied *Scoresby* standard and was eligible for extension even though it did not comply with Chapter 74 regarding the element of causation).

In his report, Dr. Tintor describes his expertise and experience in the area of chiropractic. He provides opinions about the standard of care and opines that Dr. Kelly performed a manipulation on Henry that was not within the standard of care. Dr. Tintor opines that this manipulation caused or aggravated two of Henry's lumbar discs and resulted in their failure. Dr. Tintor also states that it is within medical probability that Dr. Kelly's manipulation displaced these two lumbar discs. Thus, Dr. Tintor's report contains the opinion of an individual with expertise that Henry's claim has merit and implicates

Dr. Kelly's conduct. *See Scoresby*, 346 S.W.3d at 557 (concluding that report was defective rather than no report in case in which, though expert might not be qualified, expert was an individual with expertise who ascribed plaintiff's injury to the defendants' breach of the standards of care); *Gardner*, 274 S.W.3d at 671 (holding that report's failure to comply with Chapter 74 regarding the element of causation rendered the report defective rather than no report); *Ogletree*, 262 S.W.3d at 319–21 (holding that the report was still a defective report allowing the trial court an opportunity to grant an extension, even if radiologist expert was not qualified to provide expert testimony regarding alleged negligence of urologist); *Rosemond,* 362 S.W.3d at 840 (holding that report was defective rather than no report in case in which, though expert might not be qualified, expert was an individual with expertise who ascribed plaintiff's injuries to breach of the standard of care by treating doctor's failure to provide range-of-motion exercises during plaintiff's hospitalization). We conclude that Dr. Tintor's report contains the opinion of an individual with expertise that Henry's claim has merit.

Accordingly, the trial court erred when it concluded that Dr. Tintor's lack of qualification to give expert testimony regarding causation rendered his report no report at all rather than a defective report. In the order from which Henry appeals, the court stated that it denied Henry's request for an extension under section 74.351(c) because the two reports were no reports at all and thus the trial court could not grant an extension. However, because Dr. Tintor's report was merely deficient, the trial court should have considered whether to grant the requested extension. The proper remedy for this error is to reverse and remand so that the trial court can make this determination. *See Gardner*, 274 S.W.3d at 671; *Gannon v. Wyche*, 321 S.W.3d 881, 897–99 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

＊ ＊ ＊

For the foregoing reasons, we reverse the trial court's judgment and remand to the trial court to consider whether to exercise its discretion to grant Henry a 30-day extension under section 74.351(c).

/s/    Jeffrey V. Brown
       Justice

Panel consists of Justices Frost, Brown, and Christopher.