NUMBERS 13-14-0700-CV and 13-15-0119-CV


# COURT OF APPEALS

# THIRTEEN DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

HARLINGEN MEDICAL CENTER,
LIMITED PARTNERSHIP,                                              Appellant,

v.

ROSA ANDRADE, AS NEXT FRIEND
OF MARY HELEN ANDRADE, A MINOR
CHILD; AND DOLORES RINCONES,
ACTING BY AND THROUGH AS POWER
OF ATTORNEY AND IN THE ALTERNATIVE
AS NEXT FRIEND OF RICARDO ANDRADE,
SURVIVING FATHER OF GEORGE ANDRADE,
DECEASED, AND SERJIO ANDRADE,
AS REPRESENTATIVE OF THE ESTATE
OF GEORGE ANDRADE, DECEASED,
AND ON BEHALF OF HEIRS OF THE
ESTATE AND ON BEHALF OF ALL
THOSE ENTITLED TO RECOVER
UNDER THE TEXAS WRONGFUL
DEATH ACT FOR THE DEATH OF
GEORGE ANDRADE, DECEASED,                                         Appellees.

**On appeal from the 404th District Court
of Cameron County, Texas.**

# MEMORANDUM OPINION
**Before Justices Garza, Benavides, and Longoria
Memorandum Opinion by Justice Benavides**

In this consolidated appeal, appellant Harlingen Medical Center, L.P. ("Harlingen Medical Center") asserts by three issues, which we construe as one, that the trial court abused its discretion in denying its two motions to dismiss the medical negligence suit brought by appellees (collectively "Andrade").[1]   We affirm.

## I.   BACKGROUND

Andrade alleges that on December 18, 2011, George Andrade (herein "George") arrived at Harlingen Medical Center's emergency room complaining of severe chest pains.   Shortly thereafter, doctors admitted George and diagnosed him with a dissected aorta extending from the thoracic aorta to the iliac crests.   The next day, doctors concluded that George required surgery to address his condition, and Dr. Ruben M. Lopez, a surgeon, recommended that George be transferred from Harlingen Medical Center to Memorial Hermann Hospital in Houston; however, Memorial Hermann declined the transfer request.   According to Andrade's lawsuit, no other attempts were made to

---

[1] The full list of appellees is as follows: Rosa Andrade, as next friend of Mary Helen Andrade, a minor child; and Dolores Rincones, acting by and through as power of attorney and in the alternative as next friend of Ricardo Andrade, surviving Father of George Andrade, deceased, and Serjio Andrade, as representative of the estate of George Andrade, deceased, and on behalf of heirs of the estate and on behalf of all those entitled to recover under the Texas Wrongful Death Act for the death of George Andrade, deceased.

transfer George despite the fact that he was "facing a life or death emergency." On December 20, 2011, doctors entered an order of transfer "for emergent surgery" to treat his "ascending aortic [dissection]," but George was never transferred. Harlingen Medical Center personnel also made other unsuccessful attempts to transfer Andrade to hospitals in Galveston and San Antonio. Andrade alleges that on December 21, 2011, no further attempts were made to transfer George to another hospital. On December 22, 2011, George died at Harlingen Medical Center.

On March 3, 2014, Andrade filed a wrongful death lawsuit against Harlingen Medical Center, David Yardley, M.D., Nataraj Desai, M.D., M. Shereef Hilmy II, M.D., and Dr. Lopez, alleging various acts of medical negligence related to George's death. On June 27, 2014, Andrade filed her statutorily-mandated expert reports, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West, Westlaw through 2015 R.S.), prepared by C. Warren Adams, M.D. and Daniel DeBehnke, M.D. At some point after filing these two expert reports, Andrade served an additional expert report by Ralph Cross, a hospital administrator. On July 18, 2014, Harlingen Medical Center filed a motion to dismiss Andrade's cause of action against it by alleging that none of Andrade's three expert reports gave an opinion as to how it violated the applicable standards of care, and that the reports were "conclusory and speculative" with regard to causation of any breach by Harlingen Medical Center or its agents. On November 12, 2014, the trial court granted in part and denied in part Harlingen Medical Center's motion to dismiss. In its order, the trial court granted Andrade a thirty-day extension to supplement its expert reports with "an expert qualified to render an opinion concerning the applicable standard of care for Harlingen Medical Center and whether that standard of care was breached."

3

On December 10, 2014, Andrade filed an expert report written by Gerald "Craig" Felty, R.N., who opined as to the standards of care applicable to Harlingen Medical Center and its agents in this case, as well as how those standards of care were breached. Harlingen Medical Center subsequently filed its second motion to dismiss alleging that because Felty is not a physician, he cannot provide an opinion on causation, and that his opinions regarding causation are conclusory and insufficient. After holding a hearing, the trial court denied Harlingen Medical Center's second motion to dismiss. This interlocutory appeal followed. *See id.* § 51.014(a)(9) (West, Westlaw through 2015 R.S.).

## II. EXPERT REPORTS

By three issues, which we treat as one, Harlingen Medical Center asserts that the trial court abused its discretion in denying its second motion to dismiss based upon the alleged inadequacies of Andrade's expert reports.

## A. Standard of Review and Applicable Law

A trial court's ruling on the sufficiency of an expert's report is reviewed for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015). Under this review, we defer to the trial court's factual determinations if they are supported by the evidence, but review its legal determinations de novo. *Id.* A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Id.* However, in exercising its discretion, it is incumbent upon the trial court to review the reports, sort out their content, resolve any inconsistencies, and decide whether the reports demonstrated a good faith effort to show that the plaintiff's claims have merit. *See id.* at 144; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l) ("A court shall grant a motion challenging the

4

adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report . . . .").

An "expert report" is a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *Id.* § 74.351(r)(6). In his report, an expert must explain, based on facts set out in the report, how and why the breach caused injury. *Van Ness*, 461 S.W.3d at 142. Finally, only a physician may render an opinion about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C); *Henry v. Kelly*, 375 S.W.3d 531, 535 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

## B. Discussion

Harlingen Medical Center first argues that Andrade's expert reports are inadequate because the opinions regarding causation were "impermissibly conclusory and speculative." As a preliminary matter, we note that Harlingen Medical Center challenges only the issue of causation on appeal and does not challenge the opinions offered by Andrade's experts regarding the applicable standards of care and the failures to meet these standards of care. Thus, we will solely examine the issue of causation. *See* TEX. R. APP. P. 47.1.

We agree with Harlingen Medical Center's argument that non-physicians cannot render opinions regarding causation, *see* TEX. CIV. PRAC. & REM. CODE ANN. §

5

74.351(r)(5)(C); *Henry*, 375 S.W.3d at 535; accordingly, we will only review the opinions offered by Dr. Adams and Dr. DeBehnke regarding causation for purposes of this analysis. First, Dr. Adams, who is a board-certified cardiovascular and thoracic surgeon, opined that George presented to Harlingen Medical Center with a "Type 1 aortic dissection," which is "a tear in the wall of the aorta from above or at the level of the aortic valve, thru the aortic arch and down thru the descending aorta." Dr. Adams further labeled George's condition as a "cardiovascular surgical emergency" due to the "high incidence of rupture or pericardial tamponade resulting in immediate mortality." Dr. Adams noted in his report that failure to receive surgical treatment within 72 hours of this condition "can cause immediate bleeding into the pericardium mediastinum or free rupture into the thoracic cavities." With regard to the allegations of breaches of the standard of care by Harlingen Medical Center, Dr. Adams asserted that Harlingen Medical Center and its agents'

> delay and failure to provide and arrange for providing immediate surgery within the capabilities of the hospital and medical staff, arranging for an emergent and proper transfer for [George] to a tertiary center as ordered by physicians . . . and in a timely manner resulted in progression of the dissection, with the known complication of rupture and death.

Dr. Adams further emphasized that Harlingen Medical Center and its staff failed to provide George with an emergent transfer in a timely manner, in a situation where "time [was] of the essence." Finally, Dr. Adams opined that had Harlingen Medical Center facilitated this emergent transfer with time in mind, within reasonable medical probability, George would have "more likely than not survived." Second, Dr. DeBehnke, who is an emergency medicine physician, similarly opined that George's aortic rupture and ultimate death would not have occurred had Harlingen Medical Center and its agents not failed to

6

"implement and complete . . . two emergent transfer orders" to "another facility in a timely manner," and that Harlingen Medical Center and its employees' "delays adversely affected" George's condition.

Harlingen Medical Center argues, however, that despite these opinions offered by Dr. Adams and Dr. DeBehnke, it is nevertheless entitled to dismissal because their opinions fail to state *how* more efforts to accomplish Andrade's transfer would have resulted in a successful transfer by pointing out that Andrade lacked financial resources and transportation to a possible transferee hospital. We find this argument unpersuasive because it places a higher burden on Andrade than that which is required at this stage of the proceeding.

An expert report in a medical negligence case serves two purposes: (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013). In other words, the report need not cover every alleged liability theory to make the defendant aware of the conduct that is at issue, or require "litigation-ready evidence." *Id.* at 630–31. The evidentiary burden borne by a plaintiff seeking to avoid dismissal at this stage of her case is a lower standard than that required in a summary-judgment proceeding or trial. *See id.* at 631. Thus, the report must sufficiently describe the defendant's alleged conduct, inform the defendant of the behavior in question, and allow the trial court to determine if the allegations have merit. *Id.* If the trial court decides that the liability theory is supported, then the claim is not frivolous, and the suit may proceed. *See id.* This approach fulfills the Legislature's intent of Chapter 74 by expeditiously weeding out claims that have no merit, deterring

7

frivolous claims, and not disposing of claims regardless of their merit. *Id.* (citing *Loaisiga v. Cerda*, 379 S.W.3d 248, 263 (Tex. 2012); *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011)).

Here, Andrade advanced at least one theory of liability against Harlingen Medical that had expert support: Harlingen Medical Center and its agents failed to effectuate a timely transfer order for Andrade, which prolonged the lack of emergent intervention necessary to treat his Type 1 dissected aorta that ultimately led to his death. Accordingly, the trial court did not abuse its discretion by denying Harlingen Medical Center's motions to dismiss based on the alleged inadequacies of Andrade's expert reports.

Finally, Harlingen Medical Center appears to challenge the merits of one of Andrade's theories of liability regarding whether it was negligent for not ensuring that Andrade's surgery was performed at Harlingen Medical Center by Dr. Lopez. Harlingen Medical Center argues that because Dr. Lopez determined to transfer Andrade rather than operate on him at Harlingen Medical Center, Harlingen Medical Center cannot be held liable under such a theory. We decline to address the merits of this argument because we have already concluded that the trial court did not abuse its discretion in finding at least one theory of liability against Harlingen Medical Center supported by expert reports, which makes the claim not frivolous and permits the suit to proceed. *See id.*; *see also* TEX. R. CIV. P. 47.1.

Harlingen Medical Center's three issues are overruled.

### III. CONCLUSIONS

We affirm the trial court's orders.

GINA M. BENAVIDES,
Justice

Delivered and filed the
21st day of April, 2016.