

# NUMBER 13-17-00469-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DAVID E. BLANCHARD, D.O., SCHUMACHER
MANAGEMENT SERVICES, INC., AND THE
SCHUMACHER GROUP OF TEXAS, INC.,                    Appellants,

v.

RACHEL MARIE EVANS AND RONALD D.
EVANS, INDIVIDUALLY AS WRONGFUL
DEATH BENEFICIARIES OF RHONDA
LYNN EVANS, DECEASED, AND ON
BEHALF OF ESTATE OF RHONDA
LYNN EVANS, DECEASED,                               Appellees.

## On appeal from the 28th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Benavides**

By one issue, appellants, David E. Blanchard, D.O., Schumacher Management

Services, Inc., and the Schumacher Group of Texas, Inc. (collectively Blanchard group), appeal the denial of their objections to appellees' chapter 74 expert report and motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. ch. 74 (West, Westlaw through 2017 1st C.S.). Appellees are Rachel Marie Evans and Ronald D. Evans, individually as wrongful death beneficiaries of Rhonda Lynn Evans (Rhonda), deceased, and on behalf of the Estate of Rhonda Lynn Evans, deceased (collectively Evans). We affirm.

## I.    BACKGROUND

### A.    Background Facts

Rhonda was a thirty-eight-year-old woman who was admitted to the emergency room of Corpus Christi Medical Center-Doctors Regional Hospital (CCMC-DRH) on May 22, 2014. Rhonda complained of nausea, vomiting, diarrhea, and diffuse abdominal pain. Dr. Blanchard saw Rhonda in the emergency room and following a CT scan, ordered intravenous antibiotics as well as hydration. He also ordered Rhonda to be admitted to CCMC-DRH, even though Rhonda requested to be transferred to St. Luke's Hospital in Houston where she was scheduled for surgery in the next few days due to ongoing abdominal symptoms. Rhonda had prior medical treatment and surgeries at St. Luke's and reported a failed surgery attempt at CCMC-DRH. Dr. Blanchard denied the transfer and admitted her under the care of a hospitalist. He did not request a surgical consultation.

On May 23, Rhonda was seen by Dr. Bipasha Nath, who ordered oral antibiotics. The intravenous antibiotics ordered by Dr. Blanchard were unavailable at CCMC-DRH. However, due to her condition, Rhonda was unable to keep the oral antibiotics down.

2

The following day, enemas containing substitute antibiotics were ordered and Rhonda was diagnosed with severe sepsis and impaired kidney functioning secondary to her sepsis. The pharmacy at CCMC-DRH also suggested alternative antibiotics that were given to Rhonda.

Rhonda continued to deteriorate and began to show neurological changes. She was transferred to the intensive care unit (ICU) at CCMC-DRH. A surgical consultation was performed and it was determined Rhonda was not stable for transport to St. Luke's. The surgeon took her into emergency exploratory surgery and found Rhonda's colon to be severely impacted and swollen. He removed portions of Rhonda's colon and diagnosed her with C. diff colitis with toxic megacolon and sepsis. After surgery, Rhonda's condition was guarded. She passed away on May 25, 2014.

## B. Procedural History

In July 2016, Evans filed suit alleging multiple causes of action against the Blanchard group, Bay Area Healthcare Group, Ltd d/b/a Corpus Christi Medical Center; Bay Area Healthcare Group, Ltd. d/b/a CCMC-DRH, Bipasha Nath, M.D., Jessica Hunt, D.O., and Manzoor Bevinal, M.D.[1]

In January 2017, Evans served a chapter 74 expert report of Dr. Vincent Caldarola on the Blanchard group. *See id.* § 74.351. The Blanchard group filed objections to the chapter 74 report stating that the report failed to show how Dr. Caldarola was qualified, Dr. Caldarola failed to set forth the standard of care and how it was breached, and the report was insufficient as to causation. In March 2017, the trial court sustained the

---

[1] Evans's amended petition did not include Manzoor Bevinal, M.D. The parties other than those included in the Blanchard group are defendants in the underlying suit, but not parties to this appeal.

Blanchard group's objections, but allowed Evans thirty days to cure deficiencies. In April 2017, Evans filed an amended expert report by Dr. Caldarola. The Blanchard group again filed objections to the amended report and a motion to dismiss. In August 2017, the trial court denied the Blanchard group's objections and motion to dismiss. This accelerated appeal followed.

## II. CHAPTER 74 EXPERT REPORT

By its sole issue, the Blanchard group challenges the denial of its objections to Evans's expert report and motion to dismiss.

### A. Standard of Review and Applicable Law

We review a trial court's ruling on the sufficiency of an expert's report for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015). Under that standard, appellate courts defer to the trial court's factual determinations if they are supported by evidence but review its legal determinations de novo. *Id*. A trial court abuses its discretion if it rules without reference to guiding rules or principles. *Id*. However, in exercising its discretion, it is incumbent upon the trial court to review the reports, sort out their content, resolve any inconsistencies, and decide whether the reports demonstrated a good faith effort to show that the plaintiff's claims have merit. *See id.* at 144.

An "expert report" is a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm,

or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). In his report, an expert must explain, based on facts set out in the report, how and why the breach caused injury. *Van Ness*, 461 S.W.3d at 142. Finally, only a physician may render an opinion about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C); *Henry v. Kelly*, 375 S.W.3d 531, 535 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). A bare expert opinion that the breach caused the injury will not suffice. *Van Ness*, 461 S.W.3d at 142.

## B. Discussion

In its objections, the Blanchard group alleged that Evans's amended expert report was insufficient as to causation. The Blanchard group argues that there was an analytical gap or missing link between Dr. Blanchard's alleged breaches in the standard of care and the harm suffered by Rhonda.

An expert report in a medical negligence case serves two purposes: (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013); *see Harlingen Med. Ctr. v. Andrade*, Nos. 13-14-0700-CV & 13-15-0119-CV, 2016 WL 1613297, at *3 (Tex. App.—Corpus Christi Apr. 21, 2016, no pet.) (mem. op.). In other words, the report need not cover every alleged liability theory to make the defendant aware of the conduct that is at issue or require "litigation-ready" evidence. *Certified EMS*, 392 S.W.3d at 630–31. The evidentiary burden borne by a plaintiff seeking to avoid dismissal at this stage of the case is a lower

5

standard than that required in a summary judgment proceeding or trial. *See id.* at 631. Thus, the report must sufficiently describe the defendant's alleged conduct, inform the defendant of the behavior in question, and allow the trial court to determine if the allegations have merit. *Id.* If the trial court decides that the liability theory is supported, then the claim is not frivolous, and the suit may proceed. *See id.* This approach fulfills the Legislature's intent of Chapter 74 by expeditiously weeding out claims that have no merit, deterring frivolous claims, and not disposing of claims regardless of their merit. *Id.* (citing *Loaisiga v. Cerda*, 379 S.W.3d 248, 263 (Tex. 2012); *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011)).

Dr. Caldarola's amended report stated that he is a licensed surgeon specializing in general surgery and colon and rectal surgery. His report listed a summary of his qualifications, the materials he reviewed in making his report, the pertinent facts of the case as he saw them, his case-specific expertise, the standards of care and how they were breached or violated, and a section on causation and physiology. In the section of his report titled "Breaches and Violations of the Standard of Care," Dr. Caldarola describes the actions of Dr. Blanchard as follows:

> 1. Dr. Blanchard breached and violated the standard of care when he failed to transfer Ms. Evans to St. Luke's, a facility where she would be able to undergo surgery and receive a higher level of care. When Ms. Evans presented as a patient to Dr. Blanchard, she requested transfer to St. Luke's because she was already scheduled to undergo surgery there in three days and because prior surgical attempts at Corpus Christi Medical Center–Doctors Regional had been unsuccessful because the surgeons were unable to complete the surgery due to her anatomy. Ms. Evans complaints were the same complaints she had presented to the hospital with on prior occasions which they had been unable to fully treat because surgery had to be abandoned intraoperatively. Since the symptoms were recurring symptoms and Ms. Evans was already scheduled for surgery at St. Luke's,

6

Dr. Blanchard should have transferred her to St. Luke's where she would have been able to be taken to surgery before she developed a toxic megacolon. When Ms. Evans presented to the emergency room, her blood pressure remained the same, her heartrate remained the same, and she was feeling a bit better after receiving intravenous hydration and medications. Her condition at that time was stable and she should have been transferred to St. Luke's as she requested.

2.      Dr. Blanchard further breached the standard of care when he failed to order a surgical consult for Ms. Evans. Ms. Evans reported to Dr. Blanchard that she was scheduled for surgery to treat the symptoms she was having, symptoms which she had been experiencing on and off for a months [sic] to years. Since Ms. Evans was already scheduled for surgery, Dr. Blanchard should have recognized that her symptoms presented a diagnosis for which she needed surgery. Had Ms. Evans received a surgical consult when she initially presented to the hospital, she would have, in reasonable probability, been diagnosed as a patient in need of surgical intervention and would have been stable enough at that time to be transferred to St. Luke's where she had previously undergone surgery and where she was scheduled to undergo surgery three days later, on May 25, 2014. The failure to order a surgical consult, and the failure to order Ms. Evans transferred to St. Luke's, in reasonable medical probability, delayed Ms. Evans receiving treatment for her colitis, including surgery which she needed. Dr. Blanchard ordered intravenous Flagyl which was not available at the Corpus Christi Medical Center–Doctors Regional. It is likely that Ms. Evans would have been able to receive intravenous Flagyl had she been transferred to St. Luke's to receive a higher level of care. Even if she had not been to receive intravenous Flagyl, Ms. Evans would have been evaluated immediately by a surgeon who would have been able to take her to surgery before her infection worsened and she developed a toxic megacolon without antibiotics being giv[en] intravenously to stop its progression. The failure to transfer Ms. Evans, and to obtain a surgical consult, prevented her for receiving the timely surgeon care she needed before she developed a toxic megacolon and sepsis.

A causal relationship is established by proof that the negligent act or omission

constituted a substantial factor in bringing about the harm and absent the act or omission,

the harm would not have occurred. *Cornejo v. Hilgers*, 446 S.W.3d 113, 123 (Tex.

App.—Houston [1st Dist.] 2014, no pet.). However, an expert report need not marshal

all of the plaintiff's proof necessary to establish causation at trial, and it need not anticipate

or rebut all possible defensive theories that may ultimately be presented to the trial court. *Id.* The expert must simply provide some basis that a defendant's act or omission proximately caused injury. *Id.* And the expert must explain the basis of his statements and link his conclusions to the facts. *Id.* It is sufficient that experts "state [] a chain of events that begin with a health care provider's negligence and end in personal injury." *Id.* at 126 (citing *McKellar v. Cervantes*, 367 S.W.3d 478, 485 (Tex. App.—Texarkana 2012, no pet.)).

Dr. Caldarola's report was sufficient to give the Blanchard group notice of the specific conduct being called into question and provided a basis for the trial court to determine the claim could have merit. *See id; Certified EMS*, 392 S.W.3d at 630. Dr. Caldarola's report explained how Dr. Blanchard's refusal to transfer Rhonda to a hospital that had previously dealt with her medical condition and the lack of a surgical consultation until days later allowed Rhonda's symptoms to progress and how he felt Dr. Blanchard's actions breached the standard of care required. Dr. Caldarola's report represented a "good-faith effort" and satisfied the requirements of chapter 74. *See Samlowski v. Wooten,* 332 S.W.3d 404, 409–10 (Tex. 2011). We overrule the Blanchard group's sole issue.

### III.    CONCLUSION

We affirm the order of the trial court.

GINA M. BENAVIDES,
Justice

Delivered and filed the
10th day of January, 2019.

8